32 S.W.3d 318 (2000)
In the Interest of S.F., a Child.
No. 04-99-00751-CV.
Court of Appeals of Texas, San Antonio.
September 29, 2000.
*320 Virginia E. Maurer, San Antonio, for Appellant.
Kevin P. Yeary, Asst. Crim. Dist. Atty., Maureen Llanas (Ad Litem), San Antonio, Kimberly K. Kreider (Ad Litem), Law Office of Kimberly Kreider, San Antonio, for Appellee.
Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

OPINION
Opinion by KAREN ANGELINI, Justice.
Brian Hanes appeals the termination of his parental rights to S.F. In three issues, he complains the evidence was factually insufficient to support the termination. We disagree with his assertions and affirm the trial court's judgment.

Factual and Procedural Background
The Department of Protective and Regulatory Services first began its investigation into the well-being of Diana Fabela in April, 1998. During this investigation, Maria Fabela, Diana's mother, gave birth to S.F. After initially naming another man as S.F.'s father, Maria identified Brian Hanes as the child's father. It is undisputed that Hanes and Maria conceived S.F. while Hanes was in prison. Hanes signed an affidavit of paternity.
The Department eventually brought suit to terminate Maria's parental rights to Diana. In its third amended petition, the Department added S.F. to the suit, seeking to terminate the parents' rights to both children. In its petition, the Department alleged that Hanes engaged in conduct or knowingly placed S.F. with persons who engaged in conduct that endangered the physical or emotional well-being of the child, and that termination was in the child's best interest. See Tex.Fam.Code Ann. §§ 161.001(1)(D), 161.001(1)(E), 161.001(2) (Vernon Supp.2000). Maria voluntarily relinquished her rights to the children, and the trial court terminated Hanes's parental rights to S.F. on the grounds alleged. The court signed the termination decree and filed findings of fact and conclusions of law upon Hanes's request.
In three issues, Hanes asserts that the evidence is factually insufficient to support the trial court's findings supporting the termination of his parental rights. We find, however, there is factually sufficient evidence to support the trial court's subsection (1)(E) finding. Accordingly, we need not address the sufficiency of the evidence under section 161.001(1)(D) because only one finding alleged under section 161.001(1) is necessary to a judgment of termination. See In the Interest of R.D., 955 S.W.2d 364, 367 (Tex.App.-San Antonio 1997, writ denied). Hanes does *321 not challenge the trial court's finding that termination is in the best interest of the child.

Standard of Review
The Texas Family Code, in order to protect the relationship between a parent and child, requires a showing by clear and convincing evidence that the parent in question behaved in some manner that was detrimental to the child. Tex.Fam.Code Ann. § 161.001 (Vernon Supp.2000). This intermediate standard colors our review of the factual sufficiency of the evidence in a termination case. See In the Interest of B.T., 954 S.W.2d 44, 46 (Tex.App.-San Antonio 1997, writ denied). Applying this standard to our review of a trial judge's findings, we ask whether sufficient evidence was presented to produce in the mind of a rational fact finder a "firm belief or conviction as to the truth of the allegations sought to be established." See Tex. Fam Code Ann. § 101.007 (Vernon Supp. 2000); In the Interest of G.M., 596 S.W.2d 846, 847 (Tex.1980).

Termination of Parental Rights Under Subsection (1)(E)
To terminate the parental relationship under section 161.001(1)(E), the State must prove by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." See Tex.Fam.Code Ann. § 161.001(1)(E) (Vernon Supp.2000). Subsection (E) allows for termination upon a showing that the parental conduct itself caused the endangerment to the child. See In the Interest of R.D., 955 S.W.2d at 367. This endangering act need not be directed at the child, or have caused an actual injury or threat of injury to the child, but may instead be satisfied by showing the parent in question engaged in a course of conduct that endangered the child's physical or emotional well-being. See id. at 368.
In order to terminate the relationship between Hanes and S.F., the Department had to prove that Hanes engaged in conduct which endangered S.F.'s physical or emotional well-being. See Tex.Fam.Code Ann. § 161.001(1)(E) (Vernon Supp.2000). The Department presented the testimony of two witnesses in order to satisfy its burden. The first witness to testify was Gloria Ybanez, the family worker assigned to the Fabela family. Ms. Ybanez initially testified about Hanes's criminal history. She explained that at the time of the termination hearing, Hanes was incarcerated in Oklahoma for one of the fifteen crimes Hanes has been convicted of. Hanes's convictions are for offenses involving drugs, forgery, and burglary. She further testified that there was a possibility that upon his release, Hanes faced parole and probation revocations in other places, such as Tarrant County, Texas and Sherman, Texas.
Ms. Ybanez additionally discussed Hanes's discipline problems while he has been incarcerated. First, she explained that Hanes and Maria engaged in sexual intercourse on the prison grounds during a visitation, which resulted in the conception of S.F. She also testified that Hanes had been punished for being outside of the designated visitation area during visitation hours, that he was disciplined for drug possession, and that after administering a drug test, traces of marijuana were found in Hanes's system.
Ms. Ybanez additionally opined that Hanes could not properly parent the child and that termination would be in S.F.'s best interests. Her conclusions were based in part on the fact that Hanes had not participated with the agency in developing a plan of service, had not responded to the plan of service sent to him, or corresponded with her in any way, and had no viable plan for caring for the child. Later, Ybanez stated that Hanes had signed and returned the service plan. The only requirement, however, was that Hanes sign the affidavit of paternity, *322 which he did. She also explained that the fact that Hanes had taken no interest in S.F., had not provided any financial support for the child, or sent any birthday cards or gifts for S.F. led her to formulate her opinions. Ms. Ybanez testified that, other than suggesting his mother as a possible placement, he has done nothing for the benefit of his child.
The State's second witness was Tina Lanpher-Pelletier, S.F.'s foster mother. Mrs. Lanpher-Pelletier's testimony related to S.F.'s half sister, Diana's account of what occurred on prison grounds between her mother and Hanes. Diana told Mrs. Lanpher-Pelletier that she went to a prison facility with her mother, who carried drugs in her own vagina into the prison, and then had sex with Hanes while the other prisoners stood guard around the couple. Diana would also carry drugs in her pockets into the prison. Previously, in referencing this conduct, Ms. Ybanez stated that she believed S.F. would be endangered by witnessing such inappropriate behavior at a prison facility. Mrs. Lanpher-Pelletier further testified that Diana had described to her the conditions of Hanes's mother's home in which she lived at one time. Diana told her that Hanes's mother had hit her on several occasions and that Hanes's mother engaged in inappropriate sexual activity with her own son. According to Ms. Ybanez, Hanes had suggested that S.F. be placed with his mother. And, the Department had conducted a home study and determined that Hanes's mother's home was not a suitable home for S.F.
Hanes asserts that this evidence was insufficient to support the "endangerment" requirement of section 161.001(1)(E). He specifically alleges that the Department must have shown "that the conditions, or conduct, posed a real threat of injury or harm not just a speculative one." We disagree. Although imprisonment, standing alone, does not constitute "engag[ing] in conduct which endangers the emotional or physical well-being of the child," it is a fact for the trial court to consider on the issue of endangerment. See Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533-34 (Tex.1997); In the Interest of B.S.T., 977 S.W.2d 481, 485 (Tex.App.-Houston [14th Dist.] 1998, no pet.). If the evidence, including imprisonment, proves a course of conduct that has the effect of endangering the child, the requirement of 161.001(1)(E) is met. Id. The State need not show incarceration was a result of a course of conduct endangering the child; it need only show incarceration was part of a course of conduct endangering the child. Id. It is inconsequential that the parental conduct considered in a termination proceeding occurred before the child's birth. Rather, courts look to what the parent did both before and after the child's birth to determine whether termination is necessary. See In the Interest of Stevenson, 27 S.W.3d 195, 202-03 (Tex. App.-San Antonio 2000, no pet. h.); Avery v. State, 963 S.W.2d 550, 553 (Tex. App.-Houston [1st Dist.] 1997, no writ).
At the time of the termination hearing, Hanes was incarcerated in Oklahoma for one of the fifteen crimes he has been convicted of. The evidence showed that there is a possibility that upon his release, Hanes faces parole and probation revocations upon his release from prison and has faced multiple disciplinary actions during his incarceration. Hanes's criminal behavior before his imprisonment and S.F.'s birth, along with his continued misbehavior during his prison stay shows Hanes has engaged in a course of conduct that would be detrimental to S.F.
We find this evidence was factually sufficient to produce in the mind of the trial judge a firm belief that by his course of conduct, Hanes's behavior endangered S.F.'s physical or emotional well being. The evidence was accordingly sufficient to support the trial court's termination of Hanes's parental rights to S.F.

Findings of Fact
Hanes challenges several of the trial court's findings of fact, asserting *323 that they are unsupported by facts in evidence. We may review findings made by a trial judge to determine whether they are supported by factually sufficient evidence. See Lucas v. Texas Dept. of Protective and Regulatory Serv's, 949 S.W.2d 500, 502 (Tex.App.-Waco 1997, writ denied) (citing Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex.1989)). However, where we have a complete transcript of the proceedings before us, we do not view the trial court's written findings as conclusive. See id. Instead, we review the entire record and will not reverse an otherwise correct judgment simply because of an erroneous finding. See id. We must therefore affirm the judgment even if the court's findings lack sufficient evidentiary support, if the record contains sufficient evidence to do so. See id. Although Hanes's assertions are partially correct, the entire record supports the trial court's judgment of termination. We therefore cannot reverse on this ground and overrule his issue. See Lucas, 949 S.W.2d at 502.

Conclusion
We find there is sufficient evidence supporting the trial court's finding under Texas Family Code section 161.001(1)(E). We therefore overrule Hanes's three issues and affirm the trial court's judgment of termination.
Concurring Opinion by CATHERINE STONE, Justice.
Concurring opinion by SARAH B. DUNCAN, Justice.
CATHERINE STONE, Justice, concurring.
As the majority states, "It is undisputed that Hanes and Maria conceived S.F. while Hanes was in prison." Perhaps a more apt description is that it is unbelievable, unimaginable, and totally unacceptable that S.F. was conceived on prison grounds while her mother held the hand of her eight year old daughter and while other male inmates surrounded the couple and shielded them from the prison guards' view.
Prisoners have no constitutionally protected right to conjugal visits with their spouse or partner during periods of incarceration. Stuart v. Heard, 359 F.Supp. 921, 924 (S.D.Tex.1973). Likewise, it has been established that authorities in charge of inmates can be subjected to criminal prosecution when they permit conjugal visits. See United States v. Marmolejo, 89 F.3d 1185 (5th Cir.1996), aff'd sub nom, Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (holding that sheriff and deputy could be prosecuted for accepting bribes to allow conjugal visits in county jail). That Hanes was allowed the opportunity to engage in sexual relations with Maria on prison grounds is beyond comprehension. Even more unfathomable is Hanes' conduct in appealing the termination and suggesting that S.F. can be placed with his motherwho has allegedly maintained an inappropriate sexual relationship with one of her other sons. This entire scenario gives new meaning to the term "frivolous appeal." In my opinion, Hanes should be fined for pursuing a frivolous appeal, and the funds should be directed to the Department of Protective and Regulatory Services for S.F.'s benefit. The unfortunate truth is that paying such a fine would be the most generous gift Hanes could offer this child.
SARAH B. DUNCAN, Justice, concurring.
I concur in the court's judgment but not its opinion. There is factually sufficient evidence of post-birth conduct by Brian Hanes to support the trial court's finding. See In re M.J.M.L., 31 S.W.3d 347 (Tex. App.-San Antonio 2000, n.p.h.) (Duncan, J., concurring) (concluding that pre-birth conduct may not be considered in determining the legal sufficiency of the evidence to support a finding under section 161.001(1)(E) of the Texas Family Code).