NO. 07-04-0334-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



DECEMBER 14, 2004



______________________________




IN THE INTEREST OF M.B., A CHILD




_________________________________



FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;



NO. 23,116; HONORABLE TOM NEELY, JUDGE



_______________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)

MEMORANDUM OPINION


 Appellant Donald Ray Fleeks appeals from an order following a bench trial
terminating his parental rights to his daughter M.B. Presenting four (2) points of error, Donald
contends the evidence was legally and factually insufficient: (1) to support the grounds for
termination advanced by the Department of Family and Protective Services and found by
the trial court; and (2) to establish that termination of his parental rights was in M.B.'s best
interest. We affirm. 

 M.B. was born on March 11, 2003 at 28 (3) weeks gestation. Both she and her mother,
Tiffany Barber, tested positive for cocaine at the time. M.B.'s lungs were not fully
developed because of her prematurity, and she suffered from significant hearing loss and
muscle rigidity as a result of her exposure to drugs in utero. She spent the first six weeks
of her life in the hospital. In April, the Department obtained conservatorship of M.B. As
soon as she was strong enough to leave the hospital, M.B. was released to a foster family,
with whom she has lived ever since. M.B. has never lived with either of her biological
parents. Following a trial on the Department's termination petition in June of 2004, the trial
court, finding by clear and convincing evidence that termination was in M.B.'s best interest,
terminated Tiffany and Donald's parental rights. As grounds to support its termination order
with respect to Donald, the trial court found that he: (1) knowingly placed or allowed M.B.
to remain in conditions or surroundings which endangered her physical or emotional well-being; (2) engaged in conduct or knowingly placed M.B. with persons who engaged in
conduct that endangered her physical or emotional well-being; and (3) failed to comply with
the provisions of a court order that specifically established the actions necessary for him
to obtain the return of M.B. after she had been in the conservatorship of the Department
for not less than nine months as a result of her removal from him for abuse or neglect. Tex.
Fam. Code Ann. § 161.001(1)(D), (E), & (O) (Vernon 2002). 

 By his second, third, and fifth (4) points of error, Donald contends the evidence is
legally and factually insufficient to support the court's findings as to the grounds for
termination. We disagree. In proceedings to terminate the parent-child relationship, the
petitioner must establish one or more acts or omissions enumerated by statute and must
additionally prove that termination of the parent-child relationship is in the best interest of
the child. Tex. Fam. Code Ann. § 161.001. Both elements must be established and proof
of one element does not relieve the petitioner of the burden of proving the other. See
Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976). Because termination of parental rights
is of such weight and gravity, due process requires the petitioner to justify termination by
clear and convincing evidence. In Interest of G.M., 596 S.W.2d 846, 847 (Tex. 1980). 
Clear and convincing evidence is that measure or degree of proof which will produce in the
mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought
to be established. Id. 

 In a legal sufficiency review of the evidence to support an order terminating parental
rights, we look at all the evidence in the light most favorable to the finding to determine
whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate
deference to the factfinder's conclusions and the role of a court conducting a legal
sufficiency review, looking at the evidence in the light most favorable to the judgment
means that a reviewing court must assume the factfinder resolved disputed facts in favor
of its finding if a reasonable factfinder could do so. Id. Thus, we disregard all evidence that
a reasonable factfinder could have disbelieved or found to have been incredible. Id. 

 The standard for reviewing the factual sufficiency of termination findings is whether
the evidence is such that a reasonable factfinder could form a firm belief or conviction
about the truth of the Department's allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). 
Under that standard, we consider whether the disputed evidence is such that a reasonable
factfinder could not have resolved the disputed evidence in favor of its finding. In re J.F.C.,
96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant that a factfinder
could not reasonably have formed a firm belief or conviction, then the evidence is factually
insufficient. Id. When, as in this case, findings of fact and conclusions of law were not
requested, and none were filed, we must presume that every disputed fact issue was found
by the trial court in support of the judgment rendered. Fields v. Texas Emp. Ins. Ass'n, 565
S.W.2d 327, 329 (Tex.Civ.App.-Amarillo 1978, writ ref'd n.r.e.). Finally, we observe that
only one statutory ground is required to terminate parental rights under section 161.001. 
See In re S.F., 32 S.W.3d 318, 320 (Tex.App.-San Antonio 2000, no pet.). Therefore we
will affirm the termination order if there is both legally and factually sufficient evidence on
any statutory ground upon which the trial court relied in terminating. See id. 

 As noted previously, one of the grounds upon which the trial court relied in granting
termination was that Donald failed to comply with the provisions of a court order that
established the actions necessary for him to obtain the return of his daughter. Tex. Fam.
Code Ann. § 161.001(1)(O). Section 161.001(1)(O) provides that parental rights may be
terminated if the court finds by clear and convincing evidence that (1) the parent failed to
comply with the provisions of a court order that specifically established the actions
necessary for him to obtain the return of the child (2) who has been in the permanent or
temporary managing conservatorship of the Department for not less than nine months, and
(3) the child's removal from the parent was a result of abuse or neglect of the child. It is
undisputed that the Department had temporary conservatorship of M.B. from April 23, 2003
until the time of trial in June of 2004. Additionally, when the trial court granted the
Department's original petition, it did so, at least in part, on the basis of the affidavit of M.B.'s
caseworker. According to him, the Department became interested in removing M.B. from
her parent's custody when it received a report from the hospital where she was being
treated that hospital personnel were unable to locate the parents. Hospital officials
explained that the parents had neglected to leave a phone number and attempts to contact
them through relatives had been futile. Furthermore, as of the date of M.B.'s removal,
neither Donald nor Tiffany had visited their daughter in nearly a month. We conclude the
evidence establishes that M.B. was removed as a result of neglect by Donald and Tiffany. 

 The undisputed evidence also establishes that Donald failed to comply with a single
requirement of the court order establishing the actions necessary to obtain the return of his
daughter. In July of 2003, (5) the Department prepared a service plan detailing the various
tasks Donald was required to perform as a prerequisite to obtaining the return of his
daughter. The caseworker who prepared the plan explained to Donald that "he needed to
complete [the] services in order to have his child placed back with him." When the
caseworker reviewed the plan with Donald and requested that he sign it, he asked if she
"could guarantee him that he would get his child back if he signed and cooperated" with it. 
After the caseworker responded that she could make him no promises, Donald told her that
he did not, then, "want to waste his time" by complying with it. Following the adversary
hearing, (6) the court, incorporating the terms of the service plan, entered temporary orders
requiring Donald and Tiffany to (1) undergo psychological examinations, (2) participate in
counseling, (3) undergo drug testing, and (4) submit to drug assessments and any
recommended in-patient or out-patient treatment. Donald's caseworker testified at the
termination trial that he completed none of those tasks. In fact, the record demonstrates
that the only affirmative action Donald has taken with respect to proving his ability to parent
M.B. is to request visitation with her. Still, as of the date of the trial, Donald had not
requested to see his child in three months. Looking at all of the evidence in the light most
favorable to the trial court's findings, we conclude that a reasonable trier of fact could have
formed a firm belief or conviction that Donald failed to comply with the provisions of a court
order that specifically established the actions necessary for him to obtain the return of his
child, who had been in the temporary managing conservatorship of the Department. The
evidence is legally sufficient to support the trial court's finding on this ground. 

 Donald maintains that, in order to prevail under section 161.001(1)(O), "the
Department had to first prove there was [sic] circumstances and orders relating to those
circumstances under which the child would have been returned to [him] had [he] complied
with those orders." Because, according to Donald, there was no circumstance under which
the Department was, in fact, going to grant him possession of his daughter, section
161.001(1)(O) could not have served as a ground for termination. The singular piece of
evidence Donald advances in support of this argument is his caseworker's testimony that
she could not guarantee that he would regain possession of M.B. if he complied with the
provisions of the service plan. We cannot agree with Donald that the caseworker's remark
indicated a determination on the part of the Department that it never would have allowed
him to regain custody of his daughter. In fact, given that the responsibility for reviewing
Donald's compliance with the service plan, ultimately, rested with a judge or a jury, not his
caseworker, her cautionary statement was appropriate. 

 Additionally, Donald maintains section 161.001(1)(O) was inapplicable because he
"was never furnished with a copy of this Service Plan . . . and, therefore, he had no
opportunity to comply with it." In support of this argument Donald offers the testimony of
his caseworker who conceded that, after Donald refused to sign the service plan, she did
not give him a written copy of it. The caseworker agreed that Donald "wouldn't know what
was in the plan if [she] didn't leave the plan with him." While Donald may not have received
a copy of the service plan, the record shows he was fully aware of what was expected of
him under both the service plan and the temporary orders. Indeed, from the record we
discern that Donald appeared and announced ready at a status hearing in September of
2003 following which the trial court entered an order approving and adopting "the
permanency plans and recommendations for the child, set out in the service plans filed with
the Court." In the same order, the court advised "the parents that progress under the
service plan [was to] be reviewed at all subsequent hearings." Thus, under the
circumstances, we conclude a reasonable factfinder could have formed a firm conviction
or belief that Donald failed to comply with the provisions of a court order that specifically
established the actions necessary for him to obtain the return of his child, who had been
in the temporary managing conservatorship of the Department. See In re C.H., 89 S.W.3d
at 25. In short, the evidence was factually sufficient to support the trial court's finding under
section 161.001(1)(O). Appellant's fifth point of error is overruled.

 Having found there to be legally and factually sufficient evidence to support at least
one of the statutory grounds upon which the trial court relied in ordering termination of
Donald's parental rights, we need not address the remaining two grounds upon which the
trial court relied. See In re S.F., 32 S.W.3d at 320. Donald's second and third points of
error are overruled.

 By his first point of error, Donald claims the evidence was legally and factually
insufficient to support the trial court's determination that termination of his parental rights
was in M.B.'s best interest. We disagree. This portion of our inquiry proceeds from the
policy-based presumption that the best interest of a child is usually served by preserving
the parent-child relationship. Wilson v. State, 116 S.W.3d 923, 929 (Tex.App.-Dallas 2003,
no pet.). In determining the best interest of the child, a number of factors have been
considered including: (1) the desires of the child; (2) the emotional and physical needs of
the child now and in the future; (3) the emotional and physical danger to the child now and
in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals; (6) the plans for the child by these individuals; (7) the
stability of the home; (8) the acts or omissions of the parent which may indicate that the
existing parent-child relationship is not a proper one; and (9) any excuse for the acts or
omissions of the parent. Holley v. Adams, 544 S.W.2d at 371-72. These factors are not
exhaustive; some listed factors may be inapplicable to some cases, while other factors not
on the list may also be considered when appropriate. In re C.H., 89 S.W.3d at 27. 
Furthermore, undisputed evidence of just one factor may be sufficient in a particular case
to support a finding that termination is in the best interest of the child. Id. In contrast, the
presence of scant evidence relevant to each Holley factor will not support such a finding. 
Id. Evidence that proves one or more statutory grounds for termination may also constitute
evidence illustrating that termination is in the child's best interest. Id. at 28. The
Department simply must have presented enough evidence from which the factfinder could
reasonably have formed a firm conviction or belief that the child's best interest warranted
termination. In re D.S.A., 113 S.W.2d 567, 574 (Tex.App.--Amarillo 2003, no pet.). 

 Here, the record reveals that: (1) M.B. is a "special needs" child who requires
nebulizer treatments to aid her breathing, occupational therapy to help with muscle rigidity,
medicine two to three times a day for reflux, and speech therapy to assist with her
swallowing deficiencies; (2) M.B.'s condition requires her to attend doctor's appointments
in Fort Worth every month to six weeks; (3) there is a possibility that M.B. may grow out of
some of her special needs, but some of them may "stay with her"; (4) Donald was not, by
his own admission, "in a stable condition [at the time of trial] to take care of her or either put
her nowhere"; (5) M.B.'s caseworker believed that she needed a stable environment, that,
because of her fragile health, she could not live the transient life offered by her father, and
that if she was returned to Donald, she would be in danger of physical or emotional stress;
(6) M.B.'s foster mother is a registered nurse who worked in the neonatal ICU and was
familiar with many of the treatments M.B. required; (7) M.B.'s foster family is the only family
she has ever known, and they desire to adopt her; and (8) while Donald refused to say
whether he used drugs with Tiffany while she was pregnant, he did not believe "that the
drugs have got anything to do by the way M.B. is so slow, because her mama is like that." 
Donald asserts that the Department "failed to establish how, if at all, [he] would adversely
affect the child's present and future emotional and physical needs." The record supports
an opposite conclusion. Furthermore, assuming the Department failed to establish that
Holley factor, there is ample evidence of the others to justify the trial court's decision that
termination of Donald's parental rights was in M.B.'s best interest. See Leal v. Texas Dep't
of Protective & Regulatory Services, 25 S.W.3d 315, 318 (Tex.App.-Austin 2000, no pet.)
(noting that a finder of fact is not required to consider all of the listed factors). Indeed,
undisputed evidence established that Donald has exhibited a pattern of conduct that is
inimical to the very idea of child-rearing. In re C.H., 89 S.W.3d at 28. Thus, without looking
at the evidence in the light most favorable to the verdict, we conclude both the disputed and
undisputed evidence favoring and disfavoring the verdict permitted a reasonable factfinder
to form a firm conviction and belief that termination of the parent-child relationship was in
the best interest of M.B. In re D.S.A., 113 S.W.3d 567, 575 (Tex.App.-Amarillo 2003, no
pet.). Appellant's first point of error is overruled.

 Accordingly, the judgment of the trial court is affirmed. 

 Don H. Reavis

 Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. Donald filed his brief on July 27, 2004, asserting five points of error. With the fourth
point, he attacked the legal and factual sufficiency of the evidence to support the trial
court's finding in its June 9th termination order that he had executed an "unrevoked or
irrevocable affidavit of relinquishment of parental rights." On August 12th, the trial court
signed a nunc pro tunc termination order deleting the finding challenged by Donald. The
corrected order has been made a part of the record on appeal. Discerning that Donald's
point was rendered moot with the filing of the nunc pro tunc order, we will not address it. 

3. By its brief, the Department claimed that Derek Andrews, M.B.'s caseworker,
testified that M.B. was born at 23 weeks. Our review of the record, however, reveals that
he, in fact, asserted she was born at 28 weeks gestation.
4. Donald's fourth point of error attacks the sufficiency of the court's finding that he
executed an irrevocable affidavit of relinquishment. Because the record reveals that the
trial court deleted that finding in its nunc pro tunc termination order, we need not address
his fourth point.
5. The service plan was filed with the court on August 23, 2003. The document
reflects, however, that the Department "gave or mailed a copy of this plan to the parents: 
7/9/2003." 
6. See Tex. Fam. Code Ann. § 262.201 (Vernon 2002).