NO. 07-04-0334-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 14, 2004

_____

IN THE INTEREST OF M.B., A CHILD

_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 23,116; HONORABLE TOM NEELY, JUDGE

_____

Before QUINN and REAVIS, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant Donald Ray Fleeks appeals from an order following a bench trial terminating his parental rights to his daughter M.B. Presenting four[2] points of error, Donald

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

[2]Donald filed his brief on July 27, 2004, asserting five points of error. With the fourth point, he attacked the legal and factual sufficiency of the evidence to support the trial court's finding in its June 9th termination order that he had executed an "unrevoked or irrevocable affidavit of relinquishment of parental rights." On August 12th, the trial court signed a nunc pro tunc termination order deleting the finding challenged by Donald. The

contends the evidence was legally and factually insufficient: (1) to support the grounds for termination advanced by the Department of Family and Protective Services and found by the trial court; and (2) to establish that termination of his parental rights was in M.B.'s best interest. We affirm.

M.B. was born on March 11, 2003 at 28[3] weeks gestation. Both she and her mother, Tiffany Barber, tested positive for cocaine at the time. M.B.'s lungs were not fully developed because of her prematurity, and she suffered from significant hearing loss and muscle rigidity as a result of her exposure to drugs *in utero*. She spent the first six weeks of her life in the hospital. In April, the Department obtained conservatorship of M.B. As soon as she was strong enough to leave the hospital, M.B. was released to a foster family, with whom she has lived ever since. M.B. has never lived with either of her biological parents. Following a trial on the Department's termination petition in June of 2004, the trial court, finding by clear and convincing evidence that termination was in M.B.'s best interest, terminated Tiffany and Donald's parental rights. As grounds to support its termination order with respect to Donald, the trial court found that he: (1) knowingly placed or allowed M.B. to remain in conditions or surroundings which endangered her physical or emotional well-

corrected order has been made a part of the record on appeal. Discerning that Donald's point was rendered moot with the filing of the nunc pro tunc order, we will not address it.

[3]By its brief, the Department claimed that Derek Andrews, M.B.'s caseworker, testified that M.B. was born at 23 weeks. Our review of the record, however, reveals that he, in fact, asserted she was born at 28 weeks gestation.

2

being; (2) engaged in conduct or knowingly placed M.B. with persons who engaged in conduct that endangered her physical or emotional well-being; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of M.B. after she had been in the conservatorship of the Department for not less than nine months as a result of her removal from him for abuse or neglect. Tex. Fam. Code Ann. § 161.001(1)(D), (E), & (O) (Vernon 2002).

By his second, third, and fifth[4] points of error, Donald contends the evidence is legally and factually insufficient to support the court's findings as to the grounds for termination. We disagree. In proceedings to terminate the parent-child relationship, the petitioner must establish one or more acts or omissions enumerated by statute and must additionally prove that termination of the parent-child relationship is in the best interest of the child. Tex. Fam. Code Ann. § 161.001. Both elements must be established and proof of one element does not relieve the petitioner of the burden of proving the other. *See* Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976). Because termination of parental rights is of such weight and gravity, due process requires the petitioner to justify termination by clear and convincing evidence. In Interest of G.M., 596 S.W.2d 846, 847 (Tex. 1980). Clear and convincing evidence is that measure or degree of proof which will produce in the

---

[4]Donald's fourth point of error attacks the sufficiency of the court's finding that he executed an irrevocable affidavit of relinquishment. Because the record reveals that the trial court deleted that finding in its nunc pro tunc termination order, we need not address his fourth point.

mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.*

In a legal sufficiency review of the evidence to support an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* Thus, we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

The standard for reviewing the factual sufficiency of termination findings is whether the evidence is such that a reasonable factfinder could form a firm belief or conviction about the truth of the Department's allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). Under that standard, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* When, as in this case, findings of fact and conclusions of law were not

4

requested, and none were filed, we must presume that every disputed fact issue was found by the trial court in support of the judgment rendered. Fields v. Texas Emp. Ins. Ass'n, 565 S.W.2d 327, 329 (Tex.Civ.App.–Amarillo 1978, writ ref'd n.r.e.). Finally, we observe that only one statutory ground is required to terminate parental rights under section 161.001. *See* In re S.F., 32 S.W.3d 318, 320 (Tex.App.–San Antonio 2000, no pet.). Therefore we will affirm the termination order if there is both legally and factually sufficient evidence on any statutory ground upon which the trial court relied in terminating. *See id*.

As noted previously, one of the grounds upon which the trial court relied in granting termination was that Donald failed to comply with the provisions of a court order that established the actions necessary for him to obtain the return of his daughter. Tex. Fam. Code Ann. § 161.001(1)(O). Section 161.001(1)(O) provides that parental rights may be terminated if the court finds by clear and convincing evidence that (1) the parent failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the child (2) who has been in the permanent or temporary managing conservatorship of the Department for not less than nine months, and (3) the child's removal from the parent was a result of abuse or neglect of the child. It is undisputed that the Department had temporary conservatorship of M.B. from April 23, 2003 until the time of trial in June of 2004. Additionally, when the trial court granted the Department's original petition, it did so, at least in part, on the basis of the affidavit of M.B.'s caseworker. According to him, the Department became interested in removing M.B. from her parent's custody when it received a report from the hospital where she was being

treated that hospital personnel were unable to locate the parents. Hospital officials explained that the parents had neglected to leave a phone number and attempts to contact them through relatives had been futile. Furthermore, as of the date of M.B.'s removal, neither Donald nor Tiffany had visited their daughter in nearly a month. We conclude the evidence establishes that M.B. was removed as a result of neglect by Donald and Tiffany.

The undisputed evidence also establishes that Donald failed to comply with a single requirement of the court order establishing the actions necessary to obtain the return of his daughter. In July of 2003,[5] the Department prepared a service plan detailing the various tasks Donald was required to perform as a prerequisite to obtaining the return of his daughter. The caseworker who prepared the plan explained to Donald that "he needed to complete [the] services in order to have his child placed back with him." When the caseworker reviewed the plan with Donald and requested that he sign it, he asked if she "could guarantee him that he would get his child back if he signed and cooperated" with it. After the caseworker responded that she could make him no promises, Donald told her that he did not, then, "want to waste his time" by complying with it. Following the adversary hearing,[6] the court, incorporating the terms of the service plan, entered temporary orders requiring Donald and Tiffany to (1) undergo psychological examinations, (2) participate in

---

[5]The service plan was filed with the court on August 23, 2003. The document reflects, however, that the Department "gave or mailed a copy of this plan to the parents: 7/9/2003."

[6]*See* Tex. Fam. Code Ann. § 262.201 (Vernon 2002).

counseling, (3) undergo drug testing, and (4) submit to drug assessments and any recommended in-patient or out-patient treatment. Donald's caseworker testified at the termination trial that he completed none of those tasks. In fact, the record demonstrates that the only affirmative action Donald has taken with respect to proving his ability to parent M.B. is to request visitation with her. Still, as of the date of the trial, Donald had not requested to see his child in three months. Looking at all of the evidence in the light most favorable to the trial court's findings, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that Donald failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of his child, who had been in the temporary managing conservatorship of the Department. The evidence is legally sufficient to support the trial court's finding on this ground.

Donald maintains that, in order to prevail under section 161.001(1)(O), "the Department had to first prove there was [sic] circumstances and orders relating to those circumstances under which the child would have been returned to [him] had [he] complied with those orders." Because, according to Donald, there was no circumstance under which the Department was, in fact, going to grant him possession of his daughter, section 161.001(1)(O) could not have served as a ground for termination. The singular piece of evidence Donald advances in support of this argument is his caseworker's testimony that she could not guarantee that he would regain possession of M.B. if he complied with the provisions of the service plan. We cannot agree with Donald that the caseworker's remark indicated a determination on the part of the Department that it never would have allowed

7

him to regain custody of his daughter. In fact, given that the responsibility for reviewing Donald's compliance with the service plan, ultimately, rested with a judge or a jury, not his caseworker, her cautionary statement was appropriate.

Additionally, Donald maintains section 161.001(1)(O) was inapplicable because he "was never furnished with a copy of this Service Plan . . . and, therefore, he had no opportunity to comply with it." In support of this argument Donald offers the testimony of his caseworker who conceded that, after Donald refused to sign the service plan, she did not give him a written copy of it. The caseworker agreed that Donald "wouldn't know what was in the plan if [she] didn't leave the plan with him." While Donald may not have received a copy of the service plan, the record shows he was fully aware of what was expected of him under both the service plan and the temporary orders. Indeed, from the record we discern that Donald appeared and announced ready at a status hearing in September of 2003 following which the trial court entered an order approving and adopting "the permanency plans and recommendations for the child, set out in the service plans filed with the Court." In the same order, the court advised "the parents that progress under the service plan [was to] be reviewed at all subsequent hearings." Thus, under the circumstances, we conclude a reasonable factfinder could have formed a firm conviction or belief that Donald failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of his child, who had been in the temporary managing conservatorship of the Department. *See In re C.H.*, 89 S.W.3d

at 25. In short, the evidence was factually sufficient to support the trial court's finding under section 161.001(1)(O). Appellant's fifth point of error is overruled.

Having found there to be legally and factually sufficient evidence to support at least one of the statutory grounds upon which the trial court relied in ordering termination of Donald's parental rights, we need not address the remaining two grounds upon which the trial court relied. *See In re S.F.,* 32 S.W.3d at 320. Donald's second and third points of error are overruled.

By his first point of error, Donald claims the evidence was legally and factually insufficient to support the trial court's determination that termination of his parental rights was in M.B.'s best interest. We disagree. This portion of our inquiry proceeds from the policy-based presumption that the best interest of a child is usually served by preserving the parent-child relationship. Wilson v. State, 116 S.W.3d 923, 929 (Tex.App.–Dallas 2003, no pet.). In determining the best interest of the child, a number of factors have been considered including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d at 371-72. These factors are not

9

exhaustive; some listed factors may be inapplicable to some cases, while other factors not on the list may also be considered when appropriate. *In re C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id*. In contrast, the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *Id*. Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *Id*. at 28. The Department simply must have presented enough evidence from which the factfinder could reasonably have formed a firm conviction or belief that the child's best interest warranted termination. In re D.S.A., 113 S.W.2d 567, 574 (Tex.App.--Amarillo 2003, no pet.).

Here, the record reveals that: (1) M.B. is a "special needs" child who requires nebulizer treatments to aid her breathing, occupational therapy to help with muscle rigidity, medicine two to three times a day for reflux, and speech therapy to assist with her swallowing deficiencies; (2) M.B.'s condition requires her to attend doctor's appointments in Fort Worth every month to six weeks; (3) there is a possibility that M.B. may grow out of some of her special needs, but some of them may "stay with her"; (4) Donald was not, by his own admission, "in a stable condition [at the time of trial] to take care of her or either put her nowhere"; (5) M.B.'s caseworker believed that she needed a stable environment, that, because of her fragile health, she could not live the transient life offered by her father, and that if she was returned to Donald, she would be in danger of physical or emotional stress; (6) M.B.'s foster mother is a registered nurse who worked in the neonatal ICU and was

10

familiar with many of the treatments M.B. required; (7) M.B.'s foster family is the only family she has ever known, and they desire to adopt her; and (8) while Donald refused to say whether he used drugs with Tiffany while she was pregnant, he did not believe "that the drugs have got anything to do by the way M.B. is so slow, because her mama is like that." Donald asserts that the Department "failed to establish how, if at all, [he] would adversely affect the child's present and future emotional and physical needs." The record supports an opposite conclusion. Furthermore, assuming the Department failed to establish that *Holley* factor, there is ample evidence of the others to justify the trial court's decision that termination of Donald's parental rights was in M.B.'s best interest. *See* Leal v. Texas Dep't of Protective & Regulatory Services, 25 S.W.3d 315, 318 (Tex.App.–Austin 2000, no pet.) (noting that a finder of fact is not required to consider all of the listed factors). Indeed, undisputed evidence established that Donald has exhibited a pattern of conduct that is inimical to the very idea of child-rearing. *In re C.H.*, 89 S.W.3d at 28. Thus, without looking at the evidence in the light most favorable to the verdict, we conclude both the disputed and undisputed evidence favoring and disfavoring the verdict permitted a reasonable factfinder to form a firm conviction and belief that termination of the parent-child relationship was in the best interest of M.B. In re D.S.A., 113 S.W.3d 567, 575 (Tex.App.–Amarillo 2003, no pet.). Appellant's first point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

11