NO. 07-04-0526-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



APRIL 11, 2005



______________________________




IN THE INTEREST OF M.A. AND B.A., CHILDREN





_________________________________



FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2000-509,361; HONORABLE MARVIN MARSHALL, JUDGE



_______________________________




Before REAVIS and CAMPBELL, JJ. and BOYD, S.J. (1)



MEMORANDUM OPINION




 This is an appeal from an order following a bench trial terminating the parent-child
relationship between M.A. and B.A., minor children, and their mother, Kathy Jo Lee Allen. 
By her single issue, Allen challenges whether the evidence presented at trial was legally
and factually sufficient to support the trial court's findings. We affirm.

 Kathy Allen is the mother of two children, M.A., age ten, and B.A., age eight. Allen
was married to the children's father, Danny Jack Allen, for seven years. Since 1991, Danny
has been convicted of various crimes, including felony theft, criminal mischief, and felony
possession with intent to manufacture methamphetamine. In June 2000, Allen divorced
Danny and received custody of the children. At time of trial, Danny was incarcerated. He
has since executed a voluntary affidavit of relinquishment terminating his parental rights
and is not a party to this appeal. 

 Following the divorce, Allen and her children continued to live in the home while she
dated Jimmy Don Perrin. (2) During this time, Allen admits that she frequently argued with
Perrin in the children's presence and often consumed alcohol to the point of intoxication. 
In November 2002, Allen was arrested for driving with a suspended license and
misdemeanor forgery, for which she is currently serving two years probation. (3) In December
2002, the children stayed with Allen's sister, Linda Williams. While visiting the children,
Allen was arrested for driving with a suspended license and possession of drug
paraphernalia. Soon after, Williams contacted the Texas Department of Family and
Protective Services (the Department) with concerns about Allen's behavior and her
supervision of the children.

 The Department began conducting its initial investigation after Allen was released
from jail. Although reluctant to participate or assist in the investigation, Allen did agree to
a safety plan prohibiting Perrin from contacting the children until the Department could
address safety concerns. Still, Allen continued to allow Perrin to visit the residence, and
the children informed caseworkers that they were witness to several incidents of domestic
violence. The children related to caseworker Leslie Struck how Perrin would sometimes
throw and destroy items in the home and that they witnessed Allen kicking Perrin with her
boots. They also described how after one argument Perrin physically restrained Allen to the
bed bounding her with "zip-ties." (4)

 In March 2003, Allen was again arrested for driving with a suspended license. As
a result, the children were forced to stay the weekend with their father, Danny, and his
girlfriend, Heather Stephens, who, at that time, were under investigation for the
manufacture and trafficking of methamphetamines. The children were returned to their
mother's care when she was released from jail the following week. Shortly thereafter,
caseworker Struck smelled a strong scent of ammonia coming from the children's home
causing her to suspect that the occupants were involved in the illegal manufacture of
methamphetamines. On April 11, 2003, after Allen refused to submit to drug tests as
required by the safety plan, the Department arranged for the children to be placed with their
maternal aunt Trish McWright in Lubbock and requested that Allen not visit them without
supervision. Soon thereafter, Allen went to the residence and threatened McWright in front
of the children. As a result, McWright refused to continue to care for the children, and on
April 14, 2003, they were removed and placed in the custody of the State. The Department
filed its petition for termination of parental rights on April 15, 2003. 

 In early 2004, the Department began family reunification efforts in an attempt to
allow the children to return to their mother's custody. Allen attended therapy sessions and
made efforts to maintain meaningful employment. However, in drug tests administered on
January 8, January 21, May 10, and August 9, Allen tested positive for methamphetamines. 
The positive tests were in violation of her probation and her visitation rights with her
children were suspended. Allen admits that she did not seek treatment for her drug
addiction until the week before the final hearing in September 2004. At time of trial, the
children had been in the custody of the State for 17 months.

 On October 15, 2003, following a non-jury trial, the court terminated Allen's parental
rights under section 161.001 of the Texas Family Code by finding clear and convincing
evidence that: (1) she knowingly placed or allowed the children to remain in conditions or
surroundings which endangered their physical or emotional well-being; (2) she engaged in
conduct or knowingly placed the children with persons who engaged in conduct which
endangered their physical or emotional well-being; and (3) termination of the parent-child
relationship was in the best interest of the children. By her only issue, Allen contends the
evidence is legally and factually insufficient to terminate her parental rights. We disagree.

Review of Termination Proceedings

 The natural right existing between parents and their children is of constitutional
dimensions. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination
proceedings must be strictly scrutinized. In re G.M., 596 S.W.2d 846, 846 (Tex. 1980). 
However, while parental rights are of constitutional magnitude, they are not absolute. In
re C.H., 89 S.W.3d 17, 26 (Tex. 2002). Just as it is imperative for courts to recognize the
constitutional underpinnings of the parent-child relationship, it is also essential that
emotional and physical interests of the child not be sacrificed merely to preserve that right. 
Id. A termination decree is complete, final, irrevocable, and divests for all time that natural
right as well as all legal rights, privileges, duties, and powers with respect to each other
except for the child's right to inherit. Holick, 685 S.W.2d at 20. In proceedings to terminate
the parent-child relationship under section 161.001 of the Family Code, the petitioner must
establish one or more acts or omissions enumerated under subsection (1) of the statute,
and must additionally prove that termination of the parent-child relationship is in the best
interest of the child. Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976). Though the same
evidence may be probative of both issues, both elements must be established and proof
of one element does not relieve the petitioner of the burden of proving the other. See id.;
In re C.H., 89 S.W.3d at 28. 

 We turn now to the standards of review for challenges to sufficiency of the evidence
in termination proceedings. Because Rule 296 of the Texas Rules of Civil Procedure
provides for requests for findings of facts and conclusions of law in any case, we must first
consider the appropriate standard of review of a judgment following a non-jury trial where
the trial court did not make any findings of fact or conclusions of law and a reporter's record
has been provided. (5) In such case, the appellate court presumes the trial court found all fact
questions in support of its judgment and must affirm that judgment on any legal theory
supported by the pleadings and evidence. Point Lookout West, Inc. v. Whorton, 742
S.W.2d 277, 278 (Tex. 1987). When a reporter's record has been provided, the implied
findings may be challenged for legal and factual insufficiency "the same as jury findings or
a trial court's findings of fact." Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989). 


 Because termination of parental rights is of such weight and gravity, due process
requires the petitioner to justify termination by clear and convincing evidence. Tex. Fam.
Code § 161.001; In re G.M., 596 S.W.2d at 847. This standard has been defined as
"whether the evidence is such that a factfinder could reasonably form a firm belief or
conviction about the truth of the State's allegations." In re C.H., 89 S.W.3d at 25. Although
this standard is higher than traditional sufficiency standards of review, an appellate court
must not be so rigorous that the only findings that withstand its review are those
established beyond a reasonable doubt. Id. at 26. In this regard, in considering whether
the evidence is factually sufficient to support the implied findings, we must determine
whether the evidence is such that a reasonable factfinder could form a firm belief or
conviction about the truth of the Department's allegations. See id. at 25. If, in light of the
entire record, the disputed evidence that a reasonable factfinder could not have credited
in favor of the finding is so significant that a factfinder could not reasonably have formed
a firm belief or conviction, then the evidence is factually insufficient. In re J.F.C., 96 S.W.3d
256, 266 (Tex. 2002). When reviewing the legal sufficiency of the evidence to support an
order terminating parental rights, we look at all the evidence in the light most favorable to
the finding to determine whether a reasonable trier of fact could have formed a firm belief
or conviction that its finding was true. Id. Thus, we disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been incredible. Id. We will
affirm the termination order if there is both legally and factually sufficient evidence on any
statutory ground upon which the trial court relied. See, e.g., In re S.F., 32 S.W.3d 318, 320
(Tex.App.-San Antonio 2000, no pet.).

Analysis


 We first review the sufficiency of the evidence under section 161.001(1)(D) and (E),
as to whether Allen knowingly placed or allowed her children to remain in conditions or
surroundings which endangered their physical or emotional well-being or whether she
engaged in conduct or knowingly placed her children with persons who engaged in conduct
which endangered their physical or emotional well-being. We begin by noting that the
record does not reflect any actual physical harm or abuse to the children resulting from
Allen's conduct or the conditions in which they lived. This is not to say, however, that the
potential for such harm did not exist. 

 On appeal, Allen contends there is no evidence that the children were placed in a
dangerous situation or that the children were placed with persons who were presently
engaging in conduct that could jeopardize their welfare. We disagree. There was
testimony from several witnesses, including Allen, as to the domestic violence that occurred
in the home between she and Perrin. These altercations involved the throwing and
destruction of household objects, in addition to physical assault. Although Allen insists that
she has ended her relationship with Perrin, evidence suggests she has continued to have
contact with him since the children were removed from the home. There is also evidence
that the children were exposed to the use, manufacture, and delivery of
methamphetamines. Witnesses testified as to the smell of ammonia emanating from the
home and observed numerous individuals arriving at and leaving the property in a matter
of minutes. On one occasion, the children stayed with their father and his girlfriend in a
hotel while they were the subject of an ongoing investigation for the manufacturing and
trafficking of methamphetamines. Furthermore, Allen has admitted that she is a
methamphetamine addict and testified as to her difficulties in overcoming this addiction. 
We find these circumstances, combined with the fact that Allen has been reluctant to seek
assistance, sufficient to allow a factfinder to reasonably conclude that she endangered her
children's physical well-being and raises doubt as to her ability to provide her children a
safe environment in which to live. Just as importantly, Allen's choice of lifestyle has also
had a negative impact on the emotional welfare of her children. Allen's conduct need not
cause physical injury as a termination of the parent-child relationship may be based on
emotional endangerment alone. In re S.H.A., 728 S.W.2d 73, 83-84 (Tex.App-Dallas 1987,
writ ref'd n.r.e). 

 It is clear from the record that both children, ages 10 and 8, were consciously aware
of their mother's drug and alcohol abuse and even attributed their mother's conduct to that
fact. When asked about the children's ability to comprehend their mother's problems, their
guardian ad litem stated that "they were just like sponges" and that "they soaked it all in." 
Doctor Wilbanks, a counselor and family therapist, testified that when Allen would fail to
show up for visits, the children expressed disappointment and anger and asserted that it
was probably due to their mother's drug use. The children also informed caseworkers that
Allen repeatedly instructed them not to discuss with anyone about what was going on in the
home or they would be taken away. As a consequence of Allen's conduct, both children are
exhibiting behavioral problems and show signs of severe depression, especially M.A. 
Applying the appropriate standards of review, we find the evidence to be legally and
factually sufficient so as to enable a factfinder to reasonably form a firm conviction or belief
that Allen endangered the physical and emotional well-being of her children.

 We now turn our focus to whether termination of the parent-child relationship is in
the best interest of the children. See § 161.001(2). We begin with the presumption that
the best interest of a child is usually served by preserving the parent-child relationship. 
Wilson v. State, 116 S.W.3d 923, 929 (Tex.App.-Dallas 2003, no pet.). In deciding the
best interest of a child, we consider several factors including: (1) the desires of the child;
(2) the emotional and physical needs of the child now and in the future; (3) the emotional
and physical danger to the child now and in the future; (4) the parental abilities of the
individuals seeking custody; (5) the programs available to assist these individuals; (6) the
plans for the child by these individuals; (7) the stability of the home; (8) the acts or
omissions of the parent which may indicate that the existing parent-child relationship is not
a proper one; and (9) any excuse for the acts or omissions of the parent. Holley, 544
S.W.2d at 371-72. These factors are not exhaustive; some listed factors may be
inapplicable to some cases, while other factors not on the list may also be considered when
appropriate. In re C.H., 89 S.W.3d at 27. Furthermore, undisputed evidence of one factor
may be sufficient in a particular case to support a finding that termination is in the best
interest of the child. Id. On the other hand, the presence of scant evidence relevant to
each Holley factor will not support such a finding. Id. Evidence that proves one or more
statutory grounds for termination may also constitute evidence illustrating that termination
is in the child's best interest. See id. at 28. In any case, there must be evidence from
which a factfinder could reasonably have formed a firm conviction or belief that the child's
best interest warranted termination. In re D.S.A., 113 S.W.3d 567, 574 (Tex.App.--Amarillo
2003, no pet.). 

 It is undisputed that the Allen children have feelings toward their mother, and at least
one of the children, B.A., has expressed some desire to return to her mother. Nonetheless,
Dr. Wilbanks testified that both children seek a stable environment and become angered
at their mother's drug usage. The evidence shows that Allen has repeatedly struggled to
overcome her addiction to methamphetamine, only to relapse due to a lack of commitment
and irresponsible behavior. The record also makes clear that Allen was aware of the
possibility of recovery and was informed that drug usage would impair her ability to get her
children back. She was offered assistance in this regard from the State, as well as from
family and friends who knew of her struggles. Despite this, Allen continuously failed to
make choices in the best interest of her children. Despite the fact that Allen now admits
she needs help and has "taken steps to get herself admitted," the evidence does not
suggest a willingness to commit to raising her children in a safe and suitable environment. 

 Furthermore, Dr. Hoke, a clinical psychologist, expressed concern as to whether
Allen would ever be able to lead a stable lifestyle and be an appropriate parent. Allen
argues that one or both of the children may not be adoptable and that "leaving them in that
kind of limbo is no permanency." Although a lack of evidence about plans for permanent
placement and adoption is relevant to best interest, it cannot be the dispositive factor. In
re C.H., 89 S.W.3d at 28. Doctor Wilbanks testified to the children's multitude of behavioral
problems and, based on her interaction with the family, she feels that termination of Allen's
parental rights would be in the best interest of both children, as they need resolution and
a permanent home.

 Although Allen maintains that her conduct and surroundings never jeopardized the
emotional well-being of her children, the bulk of the evidence suggests that these children,
being of such an impressionable age, will continue to develop further emotional and
behavioral problems if returned to a culture of drug abuse and apathy. We agree with
Allen's contention that just because a parent is not the very best parent does not mean that
the parent's behavior rises to the level of termination. Unfortunately, Allen's indifference
towards the emotional and physical welfare of her children rises above that of simply bad
parenting. Having carefully reviewed the record, we conclude that there is legally and
factually sufficient evidence to support the trial court's finding that termination of Allen's
parental rights under section 161.001(2) is in the best interest of the children. Allen's sole
issue is overruled.

 Accordingly, the trial court's order of termination is affirmed.

 Don H. Reavis

 Justice

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. It is unclear as to whether anyone other than Allen and her children resided in the
home. There is some evidence in the record which suggests that Perrin and another man,
Bobby Stephens, occupied the home for various periods of time.
3. Allen testified that she was initially charged with tampering with government records
after she signed her sister's name on a traffic ticket. On February 6, 2004, she pled guilty
to a reduced charge of misdemeanor forgery and began serving her probation. 
4. The children informed caseworker Struck that Perrin also threatened Allen with a
"torch with fire," leading them to believe that their mother would be tortured. 
5. Findings of fact and conclusions of law were not requested by either party.