NO. 07-04-0526-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

APRIL 11, 2005

_____


IN THE INTEREST OF M.A. AND B.A., CHILDREN

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2000-509,361; HONORABLE MARVIN MARSHALL, JUDGE

_____


Before REAVIS and CAMPBELL, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**


This is an appeal from an order following a bench trial terminating the parent-child

relationship between M.A. and B.A., minor children, and their mother, Kathy Jo Lee Allen.

By her single issue, Allen challenges whether the evidence presented at trial was legally

and factually sufficient to support the trial court's findings.  We affirm.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.

Kathy Allen is the mother of two children, M.A., age ten, and B.A., age eight. Allen was married to the children's father, Danny Jack Allen, for seven years. Since 1991, Danny has been convicted of various crimes, including felony theft, criminal mischief, and felony possession with intent to manufacture methamphetamine. In June 2000, Allen divorced Danny and received custody of the children. At time of trial, Danny was incarcerated. He has since executed a voluntary affidavit of relinquishment terminating his parental rights and is not a party to this appeal.

Following the divorce, Allen and her children continued to live in the home while she dated Jimmy Don Perrin.[2] During this time, Allen admits that she frequently argued with Perrin in the children's presence and often consumed alcohol to the point of intoxication. In November 2002, Allen was arrested for driving with a suspended license and misdemeanor forgery, for which she is currently serving two years probation.[3] In December 2002, the children stayed with Allen's sister, Linda Williams. While visiting the children, Allen was arrested for driving with a suspended license and possession of drug paraphernalia. Soon after, Williams contacted the Texas Department of Family and

---

[2]It is unclear as to whether anyone other than Allen and her children resided in the home. There is some evidence in the record which suggests that Perrin and another man, Bobby Stephens, occupied the home for various periods of time.

[3]Allen testified that she was initially charged with tampering with government records after she signed her sister's name on a traffic ticket. On February 6, 2004, she pled guilty to a reduced charge of misdemeanor forgery and began serving her probation.

Protective Services (the Department) with concerns about Allen's behavior and her supervision of the children.

The Department began conducting its initial investigation after Allen was released from jail. Although reluctant to participate or assist in the investigation, Allen did agree to a safety plan prohibiting Perrin from contacting the children until the Department could address safety concerns. Still, Allen continued to allow Perrin to visit the residence, and the children informed caseworkers that they were witness to several incidents of domestic violence. The children related to caseworker Leslie Struck how Perrin would sometimes throw and destroy items in the home and that they witnessed Allen kicking Perrin with her boots. They also described how after one argument Perrin physically restrained Allen to the bed bounding her with "zip-ties."[4]

In March 2003, Allen was again arrested for driving with a suspended license. As a result, the children were forced to stay the weekend with their father, Danny, and his girlfriend, Heather Stephens, who, at that time, were under investigation for the manufacture and trafficking of methamphetamines. The children were returned to their mother's care when she was released from jail the following week. Shortly thereafter, caseworker Struck smelled a strong scent of ammonia coming from the children's home causing her to suspect that the occupants were involved in the illegal manufacture of

---

[4]The children informed caseworker Struck that Perrin also threatened Allen with a "torch with fire," leading them to believe that their mother would be tortured.

3

methamphetamines. On April 11, 2003, after Allen refused to submit to drug tests as required by the safety plan, the Department arranged for the children to be placed with their maternal aunt Trish McWright in Lubbock and requested that Allen not visit them without supervision. Soon thereafter, Allen went to the residence and threatened McWright in front of the children. As a result, McWright refused to continue to care for the children, and on April 14, 2003, they were removed and placed in the custody of the State. The Department filed its petition for termination of parental rights on April 15, 2003.

In early 2004, the Department began family reunification efforts in an attempt to allow the children to return to their mother's custody. Allen attended therapy sessions and made efforts to maintain meaningful employment. However, in drug tests administered on January 8, January 21, May 10, and August 9, Allen tested positive for methamphetamines. The positive tests were in violation of her probation and her visitation rights with her children were suspended. Allen admits that she did not seek treatment for her drug addiction until the week before the final hearing in September 2004. At time of trial, the children had been in the custody of the State for 17 months.

On October 15, 2003, following a non-jury trial, the court terminated Allen's parental rights under section 161.001 of the Texas Family Code by finding clear and convincing evidence that: (1) she knowingly placed or allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) she engaged in conduct or knowingly placed the children with persons who engaged in conduct which

4

endangered their physical or emotional well-being; and (3) termination of the parent-child relationship was in the best interest of the children. By her only issue, Allen contends the evidence is legally and factually insufficient to terminate her parental rights. We disagree.

Review of Termination Proceedings

The natural right existing between parents and their children is of constitutional dimensions. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings must be strictly scrutinized. In re G.M., 596 S.W.2d 846, 846 (Tex. 1980). However, while parental rights are of constitutional magnitude, they are not absolute. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002). Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right. *Id.* A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. *Holick*, 685 S.W.2d at 20. In proceedings to terminate the parent-child relationship under section 161.001 of the Family Code, the petitioner must establish one or more acts or omissions enumerated under subsection (1) of the statute, and must additionally prove that termination of the parent-child relationship is in the best interest of the child. Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976). Though the same evidence may be probative of both issues, both elements must be

5

established and proof of one element does not relieve the petitioner of the burden of proving the other.  *See id*.; *In re C.H.*, 89 S.W.3d at 28.

We turn now to the standards of review for challenges to sufficiency of the evidence in termination proceedings.  Because Rule 296 of the Texas Rules of Civil Procedure provides for requests for findings of facts and conclusions of law in any case, we must first consider the appropriate standard of review of a judgment following a non-jury trial where the trial court did not make any findings of fact or conclusions of law and a reporter's record has been provided.[5]  In such case, the appellate court presumes the trial court found all fact questions in support of its judgment and must affirm that judgment on any legal theory supported by the pleadings and evidence.  Point Lookout West, Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex. 1987).  When a reporter's record has been provided, the implied findings may be challenged for legal and factual insufficiency "the same as jury findings or a trial court's findings of fact."  Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989).

Because termination of parental rights is of such weight and gravity, due process requires the petitioner to justify termination by clear and convincing evidence.  Tex. Fam. Code § 161.001; *In re G.M.*, 596 S.W.2d at 847.  This standard has been defined as "whether the evidence is such that a factfinder could reasonably form a firm belief or

---

[5]Findings of fact and conclusions of law were not requested by either party.

6

conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25. Although this standard is higher than traditional sufficiency standards of review, an appellate court must not be so rigorous that the only findings that withstand its review are those established beyond a reasonable doubt. *Id.* at 26. In this regard, in considering whether the evidence is factually sufficient to support the implied findings, we must determine whether the evidence is such that a reasonable factfinder could form a firm belief or conviction about the truth of the Department's allegations. *See id.* at 25. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). When reviewing the legal sufficiency of the evidence to support an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Id.* Thus, we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* We will affirm the termination order if there is both legally and factually sufficient evidence on any statutory ground upon which the trial court relied. *See, e.g.*, In re S.F., 32 S.W.3d 318, 320 (Tex.App.–San Antonio 2000, no pet.).

Analysis

7

We first review the sufficiency of the evidence under section 161.001(1)(D) and (E), as to whether Allen knowingly placed or allowed her children to remain in conditions or surroundings which endangered their physical or emotional well-being or whether she engaged in conduct or knowingly placed her children with persons who engaged in conduct which endangered their physical or emotional well-being. We begin by noting that the record does not reflect any actual physical harm or abuse to the children resulting from Allen's conduct or the conditions in which they lived. This is not to say, however, that the potential for such harm did not exist.

On appeal, Allen contends there is no evidence that the children were placed in a dangerous situation or that the children were placed with persons who were presently engaging in conduct that could jeopardize their welfare. We disagree. There was testimony from several witnesses, including Allen, as to the domestic violence that occurred in the home between she and Perrin. These altercations involved the throwing and destruction of household objects, in addition to physical assault. Although Allen insists that she has ended her relationship with Perrin, evidence suggests she has continued to have contact with him since the children were removed from the home. There is also evidence that the children were exposed to the use, manufacture, and delivery of methamphetamines. Witnesses testified as to the smell of ammonia emanating from the home and observed numerous individuals arriving at and leaving the property in a matter of minutes. On one occasion, the children stayed with their father and his girlfriend in a

8

hotel while they were the subject of an ongoing investigation for the manufacturing and trafficking of methamphetamines. Furthermore, Allen has admitted that she is a methamphetamine addict and testified as to her difficulties in overcoming this addiction. We find these circumstances, combined with the fact that Allen has been reluctant to seek assistance, sufficient to allow a factfinder to reasonably conclude that she endangered her children's physical well-being and raises doubt as to her ability to provide her children a safe environment in which to live. Just as importantly, Allen's choice of lifestyle has also had a negative impact on the emotional welfare of her children. Allen's conduct need not cause physical injury as a termination of the parent-child relationship may be based on emotional endangerment alone. In re S.H.A., 728 S.W.2d 73, 83-84 (Tex.App–Dallas 1987, writ ref'd n.r.e).

It is clear from the record that both children, ages 10 and 8, were consciously aware of their mother's drug and alcohol abuse and even attributed their mother's conduct to that fact. When asked about the children's ability to comprehend their mother's problems, their guardian *ad litem* stated that "they were just like sponges" and that "they soaked it all in." Doctor Wilbanks, a counselor and family therapist, testified that when Allen would fail to show up for visits, the children expressed disappointment and anger and asserted that it was probably due to their mother's drug use. The children also informed caseworkers that Allen repeatedly instructed them not to discuss with anyone about what was going on in the home or they would be taken away. As a consequence of Allen's

9

conduct, both children are exhibiting behavioral problems and show signs of severe depression, especially M.A. Applying the appropriate standards of review, we find the evidence to be legally and factually sufficient so as to enable a factfinder to reasonably form a firm conviction or belief that Allen endangered the physical and emotional well-being of her children.

We now turn our focus to whether termination of the parent-child relationship is in the best interest of the children. *See* § 161.001(2). We begin with the presumption that the best interest of a child is usually served by preserving the parent-child relationship. Wilson v. State, 116 S.W.3d 923, 929 (Tex.App.–Dallas 2003, no pet.). In deciding the best interest of a child, we consider several factors including: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. These factors are not exhaustive; some listed factors may be inapplicable to some cases, while other factors not on the list may also be considered when appropriate. *In re C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of one factor may be sufficient in a particular case to support a finding that termination is in the

best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *Id.* Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See id.* at 28. In any case, there must be evidence from which a factfinder could reasonably have formed a firm conviction or belief that the child's best interest warranted termination. In re D.S.A., 113 S.W.3d 567, 574 (Tex.App.--Amarillo 2003, no pet.).

It is undisputed that the Allen children have feelings toward their mother, and at least one of the children, B.A., has expressed some desire to return to her mother. Nonetheless, Dr. Wilbanks testified that both children seek a stable environment and become angered at their mother's drug usage. The evidence shows that Allen has repeatedly struggled to overcome her addiction to methamphetamine, only to relapse due to a lack of commitment and irresponsible behavior. The record also makes clear that Allen was aware of the possibility of recovery and was informed that drug usage would impair her ability to get her children back. She was offered assistance in this regard from the State, as well as from family and friends who knew of her struggles. Despite this, Allen continuously failed to make choices in the best interest of her children. Despite the fact that Allen now admits she needs help and has "taken steps to get herself admitted," the evidence does not suggest a willingness to commit to raising her children in a safe and suitable environment.

Furthermore, Dr. Hoke, a clinical psychologist, expressed concern as to whether Allen would ever be able to lead a stable lifestyle and be an appropriate parent. Allen argues that one or both of the children may not be adoptable and that "leaving them in that kind of limbo is no permanency." Although a lack of evidence about plans for permanent placement and adoption is relevant to best interest, it cannot be the dispositive factor. *In re C.H.*, 89 S.W.3d at 28. Doctor Wilbanks testified to the children's multitude of behavioral problems and, based on her interaction with the family, she feels that termination of Allen's parental rights would be in the best interest of both children, as they need resolution and a permanent home.

Although Allen maintains that her conduct and surroundings never jeopardized the emotional well-being of her children, the bulk of the evidence suggests that these children, being of such an impressionable age, will continue to develop further emotional and behavioral problems if returned to a culture of drug abuse and apathy. We agree with Allen's contention that just because a parent is not the very best parent does not mean that the parent's behavior rises to the level of termination. Unfortunately, Allen's indifference towards the emotional and physical welfare of her children rises above that of simply bad parenting. Having carefully reviewed the record, we conclude that there is legally and factually sufficient evidence to support the trial court's finding that termination of Allen's parental rights under section 161.001(2) is in the best interest of the children. Allen's sole issue is overruled.

Accordingly, the trial court's order of termination is affirmed.


Don H. Reavis
Justice