

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-060-CV**

IN THE INTEREST OF P.K.C.
A/K/A P.K.G.C., A CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant L.C. appeals an order terminating her parent-child relationship with her child, P.K.C.[2] In five issues, L.C. contends that the evidence is legally and factually insufficient to support the trial court's judgment terminating her parental rights. We affirm.

------------

[1] *See* Tex. R. App. P. 47.4.

[2] The names of the parent, child, and foster parent subject to this appeal have been replaced with initials in accordance with Texas Rule of Appellate Procedure 9.8. Tex. R. App. P. 9.8.

## I. Background

Appellee Texas Department of Family and Protective Services (TDFPS) first became involved with P.K.C. in early 2007, when P.K.C. tested positive for illegal substances at birth. After further investigation, TDFPS removed P.K.C. and placed her in foster care. L.C. was subsequently incarcerated in March 2007.

P.K.C. has remained in the same foster home since the removal. P.K.C.'s foster parent, Appellee C.S., intervened in this action and wants to adopt P.K.C.

In May 2007, while L.C. was incarcerated, TDFPS provided L.C. with a service plan. Although L.C. attended some parenting classes, she did not complete any services outlined in her plan. In January 2008, following a bench trial, the trial court signed an order terminating L.C.'s parental rights with respect to P.K.C.

## II. Parent-Child Termination

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right."[3] However, "[w]hile parental rights are of

---

[3] *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003).

constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."[4]

In a termination case, the State seeks not just to limit parental rights but to end them permanently — to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit.[5] We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent.[6]

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish at least one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.[7] Both elements must be

---

[4] *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

[5] Tex. Fam. Code Ann. § 161.206(b) (Vernon Supp. 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

[6] *Holick*, 685 S.W.2d at 20–21; *In re E.M.N.*, 221 S.W.3d 815, 820 (Tex. App. — Fort Worth 2007, no pet.).

[7] Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

established; termination may not be based solely on the best interest of the child as determined by the trier of fact.[8]

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence.[9] This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.[10] It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[11]

### III.  Standards of Review

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination

---

[8] *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

[9] Tex. Fam. Code Ann. §§ 161.001, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

[10] *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied).

[11] Tex. Fam. Code Ann. § 101.007 (Vernon 2002).

4

were proven.[12] We review all of the evidence in the light most favorable to the finding and judgment and assume that the factfinder resolved any disputed facts in favor of its finding, if a reasonable factfinder could have done so, and disregard all evidence that a reasonable factfinder could have disbelieved.[13] We consider undisputed evidence even if it is contrary to the finding.[14]

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the judgment with our own.[15] We must determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief both that the parent violated at least one of the provisions in section 161.001(1) and that the termination of the parent's parental rights would be in the best interest of the child.[16] If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding,

---

[12] *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

[13] *Id.*

[14] *Id.*

[15] *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

[16] *C.H.*, 89 S.W.3d at 28.

then the evidence is factually insufficient.[17] If we reverse on factual sufficiency grounds, we must detail in our opinion why we have concluded that a reasonable factfinder could not have credited disputed evidence in favor of its finding.[18]

### IV. "Born Addicted" Finding

Section 161.001(1)(R) of the family code provides that a court may base an order terminating the parent-child relationship on clear and convincing evidence that the parent has "been the cause of the child being born addicted to alcohol or a controlled substance other than a controlled substance legally obtained by prescription, as defined by section 261.001(8) [of the family code]."[19] The trial court's order of termination included a finding that tracked this language, stating L.C. was "the cause of [P.K.C.] being born addicted to alcohol or a controlled substance . . . as defined by § 261.001(8), Texas Family Code." Section 261.001(8) defines "[b]orn addicted to alcohol or a controlled substance" to refer to a child "born to a mother who used during the pregnancy a controlled substance [as defined by applicable law]" and who, after birth, as a result of the mother's use of a controlled substance, exhibits withdrawal

---

[17] *H.R.M.*, 209 S.W.3d at 108.

[18] *J.F.C.*, 96 S.W.3d at 266–67.

[19] Tex. Fam. Code Ann. § 161.001(1)(R) (Vernon Supp. 2008).

symptoms, health effects, or the demonstrable presence of a controlled substance in the child's bodily fluids.[20]  We therefore review the record to determine whether the trial court's finding that P.K.C. was born addicted is supported by clear and convincing evidence that L.C. used a controlled substance and that, as a result, P.K.C. suffered from withdrawal symptoms, displayed adverse health effects, or had the controlled substance in her bodily fluids.

L.C. admitted that she had an extensive history of using illegal drugs and that she used illegal drugs, including cocaine, during the first three months of her pregnancy with P.K.C.  L.C. also testified that, despite knowing drug usage during her pregnancy would be dangerous to the child, she drank three beers and smoked marijuana the day before she gave birth to P.K.C.

Medical records placed in evidence without objection reflect that P.K.C. tested positive for three drugs at birth: marijuana, cocaine, and hydrocodone. L.C. admitted that during an interview in the hospital, after learning the results of P.K.C.'s drug screening, she stated that she "had went to a party, smoked a joint, it was laced with cocaine, and I was high."[21]

---

[20] *Id.* § 261.001(8).

[21] L.C. testified at trial that when she smoked the marijuana, she "didn't expect for cocaine to be inside it."

7

On appeal, L.C. questions the reliability of the medical records, noting that the results of the drug screening reflect that she tested negative for "opiates" while P.K.C. tested "positive" for opiates.[22] L.C. also points to disclaimers in the drug test reports stating that the tests are "preliminary" in nature and that, absent confirmation by separate testing, the results of the drug tests "should not be used for non-medical purposes." Finally, L.C. notes that TDFPS did not provide expert testimony regarding the test results.

TDFPS asserts in response that the drug test records reflect that two tests were performed on P.K.C., one of which indicated only whether the screening was "positive" or "negative," and the other of which "confirms" the positive results and provides specific amounts of drug levels. TDFPS also contends that L.C.'s failure to object to the admissibility of the medical records precludes her from asserting in a sufficiency argument that the tests are unreliable.

The record contains evidence that P.K.C. has extensive medical needs. Specifically, there is evidence of the following:

- P.K.C. suffered from failure to thrive, the cause of which was organic-based, and she had to have surgery to install a feeding pump;

---

[22] TDFPS offers a potential explanation in its brief for why a child might test positive while an adult would not, but because TDFPS did not present this explanation or any evidence supporting it at trial, we do not consider it here.

8

- P.K.C. had not gained enough weight to wean her off the feeding tube;

- P.K.C. needs a home health nurse;

- Doctors recommended in August and October 2007 (around seven and nine months after P.K.C.'s birth) that P.K.C. not be moved from the foster placement;

- P.K.C. has a heart murmur; and

- P.K.C.'s foster mother was concerned that P.K.C. is a "medically-fragile baby" because she is on strict feeding routines based on doctor's orders.

L.C. asserts that there is no evidence in the record connecting P.K.C.'s health issues to L.C.'s drug usage. L.C. does not, however, challenge the test results showing that P.K.C. was born with cocaine in her bodily fluids.

Viewing all this evidence most favorably to the finding and judgment, and deferring to the trial court's resolution of credibility issues, we conclude that the trial court's "born addicted" finding is supported by legally and factually sufficient evidence.[23] Because we find sufficient evidence to support this finding, we need not address L.C.'s sufficiency issues regarding other subsections of section 161.001.[24]

---

[23] *See* Tex. Fam. Code Ann § 161.001(1)(R).

[24] *See id.* § 161.001; *see also In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005); *In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.—San Antonio 2000, no pet.) ("Only one finding alleged under section 161.001(1) is necessary to a judgment of termination.").

9

## V.  Best Interest of the Child

To uphold the termination order, however, we must also examine the sufficiency of the evidence to support the court's finding that termination is in the child's best interest.[25] Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest.[26] There is also a strong presumption that keeping a child with a parent is in the child's best interest.[27] Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1)    the desires of the child;

(2)    the emotional and physical needs of the child now and in the future;

(3)    the emotional and physical danger to the child now and in the future;

(4)    the parental abilities of the individuals seeking custody;

(5)    the programs available to assist these individuals to promote the best interest of the child;

(6)    the plans for the child by these individuals or by the agency seeking custody;

---

[25] *See In re J.O.C.*, 47 S.W.3d 108, 114 (Tex. App.—Waco 2001, no pet.).

[26] Tex. Fam. Code Ann. § 263.307(a) (Vernon 2002).

[27] *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

10

(7)    the stability of the home or proposed placement;

(8)    the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9)    any excuse for the acts or omissions of the parent.[28]

These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.[29]  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.[30]  On the other hand, the presence of scant evidence relevant to each factor will not support such a finding.[31]

Accordingly, we will now examine the evidence in light of these factors.

**A.    The desires of the child**

P.K.C is too young to express her desires.  However, there was testimony that P.K.C is bonded with her foster mother, C.S., who intervened in this action seeking to adopt P.K.C.  The record reflects that C.S. is meeting P.K.C.'s medical needs.

---

[28] *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

[29] *C.H.*, 89 S.W.3d at 27.

[30] *Id.*

[31] *Id.*

**B.     The emotional and physical needs of the child now and in the future**

P.K.C. has extensive medical needs.  She had surgery to install a feeding tube and experienced problems after the surgery.  There was testimony at trial that P.K.C has been diagnosed with failure to thrive and acid reflux and that P.K.C.'s failure to thrive has an organic-based cause.  At the time of trial, P.K.C. had not gained enough weight to wean her off the feeding tube.  P.K.C. needs a home health nurse.

**C.     The emotional and physical danger to the child now and in the future**

P.K.C. requires extensive care to monitor and treat her ongoing medical problems and needs.  L.C. admitted that she has a history of abusing drugs, including cocaine and marijuana, since she was 20 years old.

**D.     The parental abilities of the individuals seeking custody**

L.C. has a history with Child Protective Services dating back to 1995. She has three other children besides P.K.C., none of whom live with her.  L.C. last saw her oldest child eleven years ago.  Moreover, at the time of trial, L.C. was in jail and unable to immediately care for P.K.C.

C.S. is meeting P.K.C.'s needs.  C.S.'s extended family is involved on a daily basis in P.K.C.'s life.  TDFPS supports permanent placement of P.K.C. with C.S.

12

**E. The programs available to assist these individuals to promote the best interest of the child**

L.C.'s CPS caseworker gave L.C. a service plan but, at the time of trial, she had not completed any of her services. L.C. testified that, when she is paroled, she wants to be referred into a parenting program that takes in women coming out of prison and works with them to get their children back.

C.S. is able to work from home a majority of the time and has extended family close by to help provide care for P.K.C. P.K.C. is in day care approximately twenty hours per week.

**F. The plans for the child by these individuals or by the agency seeking custody and the stability of the home or proposed placement**

TDFPS plans for P.K.C. to be adopted by C.S. C.S. intends to continue to provide a stable, healthy home environment for P.K.C., including remaining employed as a foster care case manager, which enables her to work from home a majority of the time, and ensuring that her extended family continues to be involved in P.K.C.'s daily life.

L.C. acknowledged at trial that she was not immediately able to care for P.K.C. because of her incarceration. L.C. wants P.K.C. moved from foster care with C.S. She also wishes for the trial court to send her for rehabilitative treatment when she is released on parole. None of P.K.C.'s blood relatives are suitable or viable placements for P.K.C.

13

**G.    The acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one**

L.C. has a history of criminal behavior and drug abuse.  She admitted to drinking three beers and smoking marijuana the day before P.K.C. was born. She has three other minor children besides P.K.C., none of whom live with her. It has been eleven years since L.C. last saw her oldest child.  L.C. maintained only minimal contact with her CPS caseworker and only visited P.K.C. once after P.K.C. was removed to foster care, despite a period of time between P.K.C.'s removal to foster care and the trial where she was not incarcerated and had opportunities to visit P.K.C.

**H.    Any excuse for the acts or omissions of the parent**

L.C. claimed that she did not know that the marijuana she smoked the day before she gave birth to P.K.C. was laced with cocaine.

Applying the appropriate standards of review, we conclude that the trial court's finding that termination of L.C.'s parental rights is in P.K.C.'s best interest is supported by legally and factually sufficient evidence.  Accordingly, we overrule L.C.'s final issue.

### VI.  Conclusion

Having determined that the evidence was legally and factually sufficient to support the trial court's finding of at least one ground for termination and to

14

support the trial court's finding that termination of the parent-child relationship was in the child's best interest, we affirm the trial court's judgment.

PER CURIAM

PANEL: CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED: February 5, 2009