NO. 07-12-0115-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 11, 2012

_____

IN THE INTEREST OF J.R. AND H.R., CHILDREN

_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 36,488; HONORABLE JACK M. GRAHAM, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellants, Lydia and Chris, appeal from the trial court's order terminating their parental rights to their children, J.R. and H.R.[1]  In presenting this appeal, appointed counsel for both parents have filed *Anders*[2] briefs in support of their respective motions to withdraw.  We grant those motions and affirm.

---

[1]To protect the children's privacy, we will refer to Appellants by their first names and the children by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (WEST 2008).  *See also* TEX. R. APP. P. 9.8(b).

[2]*Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Courts of this State, including this Court, have found the procedures set forth in *Anders v. California* applicable to appeals of orders terminating parental rights. *See In re A.W.T.,* 61 S.W.3d 87, 88 (Tex.App.--Amarillo 2001, no pet.). *See also In re D.E.S.,* 135 S.W.3d 326, 329 (Tex.App.--Houston [14th Dist.] 2004, no pet.); *Taylor v. Texas Dep't of Protective & Regulatory Servs.,* 160 S.W.3d 641, 646-67 (Tex.App.--Austin 2005, pet. denied). In support of their respective motions to withdraw, counsel certify they have conducted a conscientious examination of the record and, in their opinion, the record reflects no potentially plausible basis to support an appeal. Both counsel certify they have diligently researched the law applicable to the facts and issues and candidly discuss why, in their professional opinion, the appeal is frivolous. *In re D.A.S.,* 973 S.W.2d 296, 297 (Tex. 1998). Counsel have demonstrated they have complied with the requirements of *Anders* by (1) providing a copy of their respective brief to Appellants and (2) notifying them of their right to file a *pro se* response if they desired to do so. *Id.* By letter, this Court granted Appellants an opportunity to exercise their right to file a response to their counsel's brief, should they be so inclined. Neither Appellant filed a response. Furthermore, the Department of Family and Protective Services did not favor us with a brief.

## FACTUAL BACKGROUND

Lydia and Chris are married and their two children are the subject of the underlying suit. J.R. is a female born on June 6, 2007, and H.R. is a male born on June 17, 2009. At some point in time, J.R. made an outcry to her grandmother. She was taken to the Bridge to be interviewed and she was examined by a sexual assault nurse.

2

J.R.'s complaint was that her daddy put a stick in her butt and would play with her "nuts" (referring to her female sexual organ). Results of the exam showed trauma to her anal area, specifically dilation, although her vaginal area showed nothing out of the ordinary. According to the sexual assault nurse examiner, the anal dilation was consistent with chronic and repeated penetration of the anus over a period of time. The children were removed from the home by the Department and placed with their paternal grandmother and her husband.

Following removal of the children, the Department devised a family service plan for Lydia and Chris to follow. The plan included, among other requirements, counseling, parenting classes, psychological evaluations and a sexual predator class for Lydia. Both parents completed the parenting classes and Lydia completed the sexual predator class. Neither parent made arrangements for the required psychological evaluations. Although their psychotherapist testified that neither parent completed the required six counseling sessions with him, Lydia disputed that fact at the final hearing.

At the final hearing Chris acknowledged having four separate indictments pending against him for offenses of a sexual nature. Two of those indictments involved J.R. and the other two involved another female he allegedly abused from the time she was in kindergarten through the sixth grade. Chris blamed his failure to complete his psychological evaluation on the Department. Throughout most of his testimony, on the advice of his counsel, Chris pleaded the Fifth Amendment to many questions, including questions regarding domestic violence directed towards Lydia.

Numerous witnesses, including Chris's brother and sister testified to incidents of domestic violence by Chris against Lydia. An ex-girlfriend of Chris's described how he physically abused her by choking her and throwing her against a wall. Testimony was also presented that both children were filthy, that they were left in full dirty diapers, that they sometimes slept in a wet bed causing the room to smell of urine, and that the home was dirty and at times had no running water or gas.

The psychotherapist treating both parents testified that initially, Lydia believed Chris had abused J.R. and she moved in with her mother-in-law. She then doubted the accusations against Chris and returned to live with him. The psychotherapist further testified that Chris avoided questions and Lydia minimized the domestic violence issue. When he asked Chris about blood found on J.R.'s sheets, he explained it was from a nose bleed. During their sessions, questions related to the sexual allegations against J.R. went unanswered on the advice of Chris's counsel.

A psychologist licensed to treat sex offenders and their victims interviewed J.R. several months after her removal from the home. She testified that J.R. would shut down when discussing her parents and her drawings were disturbing. She drew phallic symbols to the best of her ability and used the word "penis" in their sessions which was unusual for a child her age. The psychologist opined that J.R.'s drawings were indicative of sexual abuse.

Testimony was presented from a former neighbor of Chris's that when she was fourteen years old, he propositioned her for sex in exchange for cigarettes and forty

dollars. She reported the incident to her family who called the police. Although she gave a statement to law enforcement, no charges were ever filed.

The Department's case-in-chief focused on Lydia and Chris's failure to provide a safe and stable home for their children. The Department's witnesses testified to alleged acts of sexual abuse by Chris against J.R. and another young female and the filthy condition of the children and the home. Witnesses also testified to Lydia's allegiance to Chris over the safety of her children. The expert witnesses all concluded that they were not comfortable recommending a return of the children to the parents and believed that termination was in the best interest of both children. The Department's rebuttal witnesses offered testimony of Chris's violent temper and Lydia's complacent attitude toward the results of the sexual assault exam.

Lydia testified that she has a good marriage and loves being a mother. She also described Chris as being a good father. In fact, she testified that the Department's witnesses had all lied about Chris's violent temper and the condition of her children and home. Regarding J.R.'s anal trauma, she explained that severe constipation and use of suppositories was the cause of the dilation. The sexual assault nurse examiner disputed this explanation.

An employee from a victim's services agency testified that on April 5, 2011, Lydia was brought in by her mother-in-law with bruises and claims of being beaten and strangled by Chris. Her mother-in-law testified that when she found her there was broken furniture strewn about the home. At the final hearing, Lydia claimed that her

injuries were sustained in a fight with one of Chris's ex-girlfriends and denied any violence towards her by Chris.

Regarding the best interests of the children, there was testimony that while this case was pending the children's grandmother and her husband cared for the children and tended to their needs. They also wanted to adopt them. Over a seven to eight month period after the children were removed from their parents, J.R.'s nightmares decreased, she no longer suffered from constipation, and she stopped acting out. H.R. was also described as being more energetic.

After presentation of the evidence, the trial court took the case under advisement and on March 28, 2012, signed a final order terminating Appellants' parental rights based on clear and convincing evidence that they had:

> knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being;
>
> engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being; and
>
> failed to comply with the provisions of a court order that specifically established the actions necessary for the parents to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse and neglect of the children.

*See* TEX. FAM. CODE ANN. § 161.001(1) (D), (E) and (O) and (2) (WEST SUPP. 2012). The court then appointed the Department as the children's permanent managing conservator with all rights and duties specified in section 153.371 of the Texas Family

6

Code. Following the final hearing, the Department continued placement of the children in the home of the paternal grandmother and her husband. The trial court filed *Findings of Fact and Conclusions of Law* in support of its order.

By their separate *Anders* briefs, both counsel maintain the evidence is sufficient to support the trial court's termination order and do not raise any arguable issues. *See Currie v. State*, 516 S.W.2d 684 (Tex.Crim.App. 1974). Upon examination of the record, we agree with their evaluations.

## STANDARD OF REVIEW IN TERMINATION CASES

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly scrutinized. *In Interest of G.M.*, 596 S.W.2d 846 (Tex. 1980). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Due process requires application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See* TEX. FAM. CODE ANN. § 101.007 (WEST 2008). *See also In re C.H.,* 89 S.W.3d at 25-26.

7

The Family Code permits a court to order termination of parental rights if the petitioner establishes one or more acts or omissions enumerated under subsection (1) of the statute and also proves that termination of the parent-child relationship is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (WEST SUPP. 2012); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).

Only one predicate finding under section 161.001(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.*, 180 S.W.3d 376, 384 (Tex.App.--Amarillo 2005, no pet.). Therefore, we will affirm the termination order if the evidence is both legally and factually sufficient to support any statutory ground upon which the trial court relied in terminating parental rights as well as the best interest finding. *In re S.F.*, 32 S.W.3d 318, 320 (Tex.App.--San Antonio, no pet.).

## § 161.001(1) GROUNDS FOR TERMINATION

### § 161.001(1)(D)

Under section 161.001(1)(D), parental rights may be terminated when clear and convincing evidence shows that a parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endanger the physical or emotional well-being of the child. Subsection (D) requires a showing that the environment in which the child is placed endangered the child's physical or emotional health. *Doyle v. Texas Dept of Pro. and Reg. Serv.*, 16 S.W.3d 390, 395 (Tex.App.--El Paso 2000, pet. denied). Additionally, subsection (D) permits termination based on a single act or

omission by the parent. *In re L.C.*, 145 S.W.3d 790, 796 (Tex.App.--Texarkana 2004, no pet.).

## § 161.001(1)(E)

Parental rights may be terminated under section 161.001(1)(E) if there is clear and convincing evidence that a parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. The cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions but also by the parent's omission or failure to act. *Doyle*, 16 S.W.3d at 395. Additionally, subsection (E) requires more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.,* 34 S.W.3d 625, 634 (Tex.App.--Fort Worth 2000, pet. denied).

## § 161.001(1)(O)

Parental rights may be terminated under section 161.001(1)(O) if the Department establishes that the children were removed because of abuse or neglect; the Department has been the permanent or temporary managing conservator for at least nine months; a court order specifically established the actions necessary for the parents to obtain the return of their children; and the parents failed to comply with that order. *See In re J.F.C.*, 96 S.W.3d at 278-79. Additionally, termination under subsection (O) does not allow for consideration of excuses for noncompliance nor does it consider

"substantial compliance" to be the same as completion. *See In re M.C.G.*, 329 S.W.3d 674, 675-76 (Tex.App.--Houston [14th Dist.] 2010, pet. denied).

## § 161.001(2) BEST INTEREST

Notwithstanding the sufficiency of the evidence to support termination under section 161.001(1), we must also find by clear and convincing evidence that termination of the parent-child relationship was in the best interest of J.R. and H.R. *See* § 161.001(2). Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. A non-exhaustive list of factors to consider in deciding best interest is found at section 263.307(b) of the Family Code. *See also Holley*, 544 S.W.2d at 371-72.

## ANALYSIS

As in a criminal case, we have independently examined the entire record to determine whether there are any non-frivolous issues which might support the appeal. *See Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *Stafford v. State*, 813 S.W.2d 503, 511 (Tex.Crim.App. 1991). Based upon the record in this case, we find the evidence is legally and factually sufficient to support the trial court's findings, both as to the grounds for termination and best interests of the children. Furthermore, we find there are no other potentially plausible issues which would support an appeal. *See Gainous v. State*, 436 S.W.2d 137 (Tex.Crim.App. 1969). After reviewing the

10

record and both *Anders* briefs, we agree with counsel that there are no plausible grounds for appeal.

## CONCLUSION

Accordingly, counsels' motions to withdraw are granted and the trial court's order terminating the parental rights of Lydia and Chris to their children J.R. and H.R. is affirmed.


Patrick A. Pirtle
Justice