

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00786-CV

**IN THE INTEREST OF P.M.M.K.**, a Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00915
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Rebeca C. Martinez, Justice

Sitting:  Rebeca C. Martinez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: April 8, 2020

AFFIRMED

Appellant ("Mother") appeals the trial court's order terminating her parental rights to her daughter P.M.M.K. Mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings on the statutory grounds for termination. *See* TEX. FAM. CODE ANN. § 161.001(b)(1). We affirm.

### BACKGROUND

On May 1, 2018, the Texas Department of Family and Protective Services (the "Department") filed a petition for conservatorship of P.M.M.K. At the time, P.M.M.K. was eleven. The Department amended its petition, on June 20, 2019, to seek termination of Mother's parental rights. On October 25, 2019, following a bench trial, the trial court ordered the

termination of Mother's parental rights to P.M.M.K., pursuant to section 161.001 of the Texas Family Code. Mother appeals.

## STANDARD OF REVIEW

Parental rights may be terminated, pursuant to section 161.001, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.) (first citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam); then citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)).

## PREDICATE STATUTORY GROUND

The trial court determined there was clear and convincing evidence that termination was in P.M.M.K.'s best interest and that Mother (1) had engaged in conduct or knowingly placed P.M.M.K. with persons who engaged in conduct which endangered her physical or emotional well-being, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); (2) constructively abandoned P.M.M.K., *see id.* § 161.001(b)(1)(N); and (3) used a controlled substance in a manner that endangered the health or safety of P.M.M.K. and either failed to complete a court-ordered substance abuse treatment program or, after completion of a program, continued to abuse a controlled substance, *see id.* § 161.001(b)(P). Mother does not challenge the trial court's best interest finding but challenges

whether legally and factually sufficient evidence supports the trial court's findings as to the predicate statutory grounds for termination under subsections (E), (N), and (P) of section 161.001(b)(1). Because termination pursuant to subsection (E) may have implications for a parent's parental rights to other children, we must address issues raised on appeal challenging the trial court's findings as to that subsection. *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019) (per curiam).

Subsection (E) allows termination of parental rights if the trial court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection (E), the trial court must determine "whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being." *In re C.J.G.*, No. 04-19-00237-CV, 2019 WL 5580253, at *2 (Tex. App.—San Antonio Oct. 30, 2019, no pet.). "'[E]ndanger' means "to expose a child to loss or injury, or to jeopardize a child's emotional or mental health." *Id*. at *3 (citing *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). "An endangerment finding often involves physical endangerment, but the statute does not require that the parent's conduct be directed at the child or that the child suffer actual injury." *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.). "Rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone." *Id*. (citation omitted). "Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *Id*. Our analysis under subsection (E) may not rest on a single act or omission; it must be "a voluntary, deliberate, and conscious course of conduct." *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). We may consider conduct both before and after the Department removed the

child from the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

*Trial Testimony*

Mother and the Department's caseworker testified at trial. Mother testified that P.M.M.K. is a middle child of five. According to Mother, while P.M.M.K. was in Mother's care, she was aggressive and violent toward authority. Mother stated that the case began after P.M.M.K. assaulted teachers and that the Department took custody of P.M.M.K. in lieu of her receiving juvenile probation. On May 1, 2018, the Department filed a petition for conservatorship of P.M.M.K. but, initially, did not seek termination of Mother's parental rights.

The caseworker testified that P.M.M.K. did well in her first placement after removal, and the Department returned P.M.M.K. to Mother's home for holiday visits. These visits went well. In March 2019, P.M.M.K. was placed back with Mother. After only a few weeks, however, P.M.M.K. ran away. According to the caseworker, P.M.M.K. was found and arrested two months later with a "rock of ice" in her possession.[1]

There is some dispute about when Mother reported that P.M.M.K. had run away. Mother testified that she believed she reported P.M.M.K. as a runaway to police within two days after P.M.M.K. had fled because the police would not accept a report for the first twenty-four hours after P.M.M.K. went missing. Mother testified that she did not call the Department to report P.M.M.K. as a runaway until two weeks after P.M.M.K. first went missing. The caseworker testified that she did not find out about P.M.M.K.'s flight until she visited Mother's home a "couple

---

[1] "'Ice' is a street name for methamphetamine hydrochloride." *Rivera v. State*, No. 2-05-056-CR, 2006 WL 743030, at *2 n.4 (Tex. App.—Fort Worth Mar. 23, 2006, pet. ref'd) (mem. op.); *see also Ex parte Lane*, 303 S.W.3d 702, 715 n.7 (Tex. Crim. App. 2009) (describing "ice" as "the form of methamphetamine that is smoked").

of weeks later." An affidavit in the record that is signed by the caseworker states that Mother informed the Department that P.M.M.K. had run away four days after she fled.

P.M.M.K. was returned to the Department's care after her arrest. The Department, thereafter, amended its petition to seek termination of Mother's parental rights. In August 2019, Mother's four other children were removed from her care based on allegations of Mother's drug use.[2] In September 2019, Mother told the caseworker that she was using methamphetamine. Mother testified that she started using drugs when she was twelve years old. Mother testified that she first used methamphetamine after P.M.M.K. was arrested with the drug in her possession because "[Mother] wanted to see what [P.M.M.K.] was doing[—]what kind of drug was that."

In September 2019, Mother was arrested for assault with a deadly weapon, and she was incarcerated at the time of trial in October 2019. Mother acknowledged that in 2005 she had been arrested for an assault on P.M.M.K.'s father and in 2012 she was arrested for an assault on another individual.

*Discussion*

On appeal, Mother argues that the evidence adduced relating to her drug use, incarceration, and alleged failure to timely report P.M.M.K. as a runaway cannot support an endangerment finding under subsection (E). We disagree. Even if we discount the evidence related to the timeliness of Mother's runaway report, evidence as to Mother's drug use, arrests, and incarceration is legally and factually sufficient to support the trial court's endangerment finding.

As to drug use, Mother argues there is no evidence that she used drugs while P.M.M.K. was in her care or that P.M.M.K. knew of Mother's drug use. However, absence of this evidence is not determinative. Under subsection (E), a trial court may consider parental conduct that

---

[2] The caseworker testified that the other children's removal is the subject of a separate case with the Department.

occurred outside of a child's presence. *See In re R.S.-T.*, 522 S.W.3d 92, 110 (Tex. App.—San Antonio 2017, no pet.). Endangering conduct "does not have to be specifically directed at the child; nor does it have to cause an actual injury to the child or even constitute a concrete threat of injury to the child . . . [; r]ather, the statute is satisfied by showing that parental conduct simply jeopardized the child's physical or emotional well-being." *In re M.J.M.L.*, 31 S.W.3d 347, 350–51 (Tex. App.—San Antonio 2000, pet. denied). Numerous courts of appeals have explained that drug use and its effect on a parent's life and ability to parent may establish an endangering course of conduct. *See In re S.S.*, No. 04-18-00325-CV, 2018 WL 6182852, at *5 (Tex. App.—San Antonio Nov. 28, 2018, no pet.) (mem. op.) (citing, among others, *In re J.O.A.*, 283 S.W.3d 336, 345 n.4 (Tex. 2009)). "Evidence that a parent continued to use illegal drugs even though the parent knew her parental rights were at risk is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature endangers a child's well-being." *In re K.J.G.*, 2019 WL 3937278, at *5. Drug use may support an endangerment finding "[b]ecause it exposes the child to the possibility that the parent may be impaired or imprisoned[.]" *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also In re J.C.R.*, No. 04-18-00949-CV, 2019 WL 2110109, at *2 (Tex. App.—San Antonio May 15, 2019, pet. denied) (mem. op.) (explaining that parental drug use may establish an endangering course of conduct under subsection (E) because it is conduct that subjects a child to a life of uncertainty and instability). Here, the undisputed evidence is that Mother first used drugs when she was twelve years old and used methamphetamine during the course of the case because she "wanted to see what [P.M.M.K.] was doing . . . ."

Mother makes no argument related to her history of arrests for assault but argues that her incarceration at the time of trial cannot support an endangerment finding because such a finding must be based on more than a single incident. "Although imprisonment, standing alone, does not

constitute 'engag[ing] in conduct which endangers the emotional or physical well-being of the child,' it is a fact for the trial court to consider on the issue of endangerment." *In re S.F.*, 32 S.W.3d 318, 322 (Tex. App.—San Antonio 2000, no pet.). "The State need not show incarceration was a result of a course of conduct endangering the child; it need only show incarceration was part of a course of conduct endangering the child." *Id.*

Here, testimony supports a conclusion that Mother's incarceration was part of a course of conduct endangering P.M.M.K. Mother testified that she had been arrested for assault in 2005 and in 2012 and that she was currently incarcerated on a pending charge of assault with a deadly weapon. *See In re L.V.B.D.*, 04-19-00632-CV, 2020 WL 690634, at *2 (Tex. App.—San Antonio Feb. 12, 2020, no pet. h.) (explaining that imprisonment as a result of a mother's violent conduct, even though not directed at her child, was a factor to be considered by the trial court on the issue of endangerment). Mother also admitted to methamphetamine use, which exposed P.M.M.K. to the possibility that Mother may be impaired or imprisoned. *See Walker*, 312 S.W.3d at 617.

On this record, we hold that the evidence is legally and factually sufficient to support the trial court's finding under section 161.001(b)(1)(E) of the Family Code. We do not address the trial court's findings under subsections (N) and (P) because only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination. *See In re N.G.*, 577 S.W.3d at 237 n.1; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

## CONCLUSION

Because Mother does not challenge the trial court's best-interest finding and because we overrule her challenge to the sufficiency of the evidence to support a finding on a predicate ground for termination, we affirm the trial court's order.

Rebeca C. Martinez, Justice