

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00261-CV

_____

IN THE INTEREST OF C.Y., A CHILD

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 20-1038-442

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Appellant S.R. (Mother) appeals the termination of her parental rights to her son, C.Y. (Calvin).[1] The trial court terminated Mother's parental rights based on three statutory predicate grounds, one of which was Mother's endangerment of Calvin by her conduct. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E). In her sole issue, Mother challenges the factual sufficiency of the evidence to support the endangering-conduct finding.

But Mother's challenge is based on a faulty premise. She assumes that she could not have endangered Calvin while he was in the custody of the Department of Family and Protective Services and thus reasons that evidence of her post-removal conduct is irrelevant. Building on this faulty assumption, she further reasons that because the Department failed to call any trial witnesses with personal knowledge of her conduct prior to Calvin's February 2020 removal, there is insufficient evidence of endangering conduct.

Mother misunderstands the nature of conduct-based endangerment. Because such endangerment is a course of conduct, Mother need not have had Calvin in her custody for her behavior to constitute endangering conduct under the governing statute and applicable case law. Based on the evidence of Mother's post-removal

---

[1]*See* Tex. R. App. P. 9.8(b)(2) (requiring the court to use an alias to refer to a minor in a parental-rights termination appeal).

2

behavior, the trial court could have formed a firm belief or conviction that Mother had engaged in endangering conduct. *See id.* Therefore, we will affirm.

## I. Governing Law

To terminate a parent–child relationship, the Department must prove two elements by clear and convincing evidence:[2]  (1) that the parent's actions satisfy at least one statutory predicate ground listed in Family Code Section 161.001(b)(1) and (2) that termination is in the child's best interest. *Id.* §§ 161.001(b)(1), .206(a), (a–1); *In re J.F.-G.*, 627 S.W.3d 304, 312–13 (Tex. 2021); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).  Here, only the first element—the statutory predicate ground—is at issue.

The trial court found that Mother's actions satisfied three statutory predicate grounds—Subsections (E), (F), and (O)—but Mother focuses her appeal on Subsection (E):[3]  the trial court's finding that she had "engaged in conduct or placed

---

[2]Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code Ann. § 101.007; *In re J.F.-G.*, 627 S.W.3d 304, 311 n.14 (Tex. 2021).

[3]Mother lists only one issue for this court's review:  her sufficiency challenge to the trial court's endangering-conduct finding. *Cf.* Tex. R. App. P. 38.1(f).  However, the substance of her attack on Subsection (E) also attacks the trial court's two other statutory predicate findings under Subsections (F) and (O).  Mother "acknowledges that evidence was introduced at trial [that] could support (F) and (O)," but because these two predicate grounds are based on post-removal conditions, Mother argues that such grounds "should not" support termination absent evidence of her pre-removal endangering conduct.  Mother cites no case law for this argument. *Cf.* Tex. R. App. P. 38.1(i).  And it is unclear whether she intended to raise it as an extension of her challenge to Subsection (E), as a separate challenge to Subsections (F) and (O), or as a challenge to the evidentiary basis for the February 2020 removal order.

[Calvin] with persons who [had] engaged in conduct [that had] endanger[ed] the physical or emotional well-being of [Calvin]." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E); *see also id.* § 161.001(b)(1)(F) (providing predicate termination ground based on a parent's "fail[ure] to support the child in accordance with the parent's ability"), (O) (providing predicate termination ground based on a parent's "fail[ure] to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child"). Although the two other statutory predicate grounds are sufficient to sustain the judgment terminating Mother's parental rights, because a finding of endangerment under Subsection (E) could jeopardize Mother's rights to her other children, constitutional considerations require us to review the sufficiency of this finding in detail. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019).

---

To the extent that she intended to raise it as a separate challenge to Subsections (F) and (O), we need not address it because the evidence to support the Subsection (E) endangerment finding is sufficient to sustain the judgment. *See* Tex. R. App. P. 47.1; *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019).

And to the extent that Mother intended to challenge the evidentiary basis for Calvin's February 2020 removal, she waived the issue by failing to challenge Calvin's removal at the initial removal hearing and by failing to challenge the removal order through a petition for writ of mandamus. Tex. R. App. P. 33.1(a); *In re M.A.-O.R.*, No. 02-11-00499-CV, 2013 WL 530952, at *5 (Tex. App.—Fort Worth Feb. 14, 2013, no pet.) (mem. op.) (overruling challenge to the evidentiary basis for removal under similar circumstances). And even if Mother had not waived the issue, it would be moot. *See In re A.H.*, No. 09-19-00025-CV, 2019 WL 2220306, at *3 (Tex. App.— Beaumont May 23, 2019, pet. denied) (mem. op.).

4

## A. Standard of Review

In our review of the factual sufficiency of an endangering-conduct finding, we must determine whether a factfinder could reasonably form a firm belief or conviction that Mother "engaged in conduct or knowingly placed [Calvin] with persons who [had] engaged in conduct [that had] endanger[ed] the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(E); *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). If the trial court could have reasonably formed such a firm belief or conviction, we will uphold the judgment. *See J.F.-G.*, 627 S.W.3d at 312; *A.C.*, 560 S.W.3d at 631.

## B. Scope of Review[4]

Our factual sufficiency analysis requires "an exacting review of the entire record with a healthy regard for the constitutional interests at stake." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)); *In re B.K.*, No. 02-21-00175-CV, 2021 WL 5848769, at *4 (Tex. App.—Fort Worth Dec. 9, 2021, pet. denied) (mem. op.). Although we give due deference to the trial court's fact findings,[5] we must weigh all the evidence supporting the challenged finding against

---

[4]"The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *A.C.*, 560 S.W.3d at 630.

[5]The trial court entered findings of fact and conclusions of law in this case.

the disputed evidence that a reasonable factfinder could not have resolved in the finding's favor. *A.C.*, 560 S.W.3d at 631.

## C. Law on Endangering Conduct

Mother contends that, to prove endangering conduct under Subsection (E), the Department could rely only upon "applicable actions or inactions prior to the removal of the child [because] the care, custody, and conservatorship of the child is given to the Department post removal." But this is not the law.

Endangering conduct is "a voluntary, deliberate, and conscious course of conduct by the parent" rather than "a single act or omission." *B.K.*, 2021 WL 5848769, at *4 (quoting *In re L.E.M.*, No. 02-11-00505-CV, 2012 WL 4936607, at *2 (Tex. App.—Fort Worth Oct. 18, 2012, no pet.) (mem. op.)); *In re R.H.*, No. 02-20-00396-CV, 2021 WL 2006038, at *13 (Tex. App.—Fort Worth May 20, 2021, no pet.) (mem. op.). As a course of conduct, endangerment "is not limited to actions directed towards the child." *J.F.-G.*, 627 S.W.3d at 315 n.43 (quoting *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009)). Rather, "[t]he specific danger to the child's well-being may be inferred from parental misconduct standing alone." *In re J.G.*, No. 02-21-00257-CV, 2022 WL 187983, at *8 (Tex. App.—Fort Worth Jan. 20, 2022, no pet. h.) (mem. op.) (quoting *In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *12 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op.)); *see In re A.J.D.*, No. 02-13-00183-CV, 2013 WL 5781478, at *4 (Tex. App.—Fort Worth Oct. 24, 2013, no pet.) (mem. op.) (similar).

In determining whether a parent has engaged in endangering conduct, the trial court may consider actions before the child's birth, actions while the child is not in the parent's presence, and actions while the child is in the Department's custody; such actions may "create an inference that similar conduct could recur and further jeopardize a child's well-being." *In re M.W.*, No. 02-21-00146-CV, 2021 WL 3679247, at *4 (Tex. App.—Fort Worth Aug. 19, 2021, pet. denied) (mem. op.); *see J.O.A.*, 283 S.W.3d at 345; *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g); *see also In re S.L.-E.A.*, No. 02-12-00482-CV, 2013 WL 1149512, at *7–10 (Tex. App.—Fort Worth Mar. 21, 2013, pet. denied) (mem. op.) (affirming sufficiency of endangering-conduct finding even though the father never had possession of the child). And such actions or conduct may be considered endangering if it would "jeopardize" the child's physical or emotional well-being or "expose" the child to injury. *J.F.-G.*, 627 S.W.3d at 312 (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987), which referenced *Webster's Dictionary* for the definition of "endanger"); *M.W.*, 2021 WL 3679247, at *4.

This is because "[s]tability and permanence are paramount in the upbringing of children," *In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied), and "a parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's well-being." *M.W.*, 2021 WL 3679247, at *4; *see M.R.J.M.*, 280 S.W.3d at 503. But evidence of a mere threat of "metaphysical injury" is not sufficient. *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Nor is evidence of "a

7

less-than-ideal family environment." *Id.*; *see In re M.M.*, No. 02-21-00185-CV, 2021 WL 5227177, at *6 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.); *In re J.K.*, No. 02-21-00199-CV, 2021 WL 5132538, at *5 (Tex. App.—Fort Worth Nov. 4, 2021, no pet.) (mem. op.).

With this framework in mind, we turn to Mother's factual sufficiency challenge, examining the record as a whole and considering all conduct supported by the evidence[6]—even if it occurred post-removal—to determine if the factfinder could have reasonably formed a firm belief or conviction that Mother had engaged in endangering conduct. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E).

## II. Mother's Endangering Conduct

Calvin was removed from Mother's custody in February 2020, and the trial court's temporary orders outlined the conditions for Calvin's return, including Mother's compliance with and completion of a Department service plan. Mother's parental rights were terminated approximately 18 months later, after a bench trial in

---

[6]The trial court's findings reference details in the caseworker affidavit that was attached to the Department's original petition for Calvin's removal, even though the affidavit was not admitted into evidence at trial. Nevertheless, we need not analyze this issue. We have a complete transcript of the proceedings, and as we discuss below, the evidence offered at trial was factually sufficient to support the trial court's judgment. *See In re S.F.*, 32 S.W.3d 318, 322–23 (Tex. App.—San Antonio 2000, no pet.) (rejecting challenge to specific findings of fact in termination case because "where we have a complete transcript of the proceedings before us, we do not view the trial court's written findings as conclusive" and must instead "affirm the judgment even if the court's findings lack sufficient evidentiary support[] if the record contains sufficient evidence to do so").

August 2021. At that trial, the court heard ample evidence that, during the case's 18-month time frame, Mother not only failed to comply with the temporary orders and service plan, but she also maintained an unstable lifestyle and engaged in hazardous, often illegal behavior. The trial court heard evidence of, among other things, (A) Mother's ongoing drug use, (B) her failure to attend or complete court-ordered treatments, (C) her failure to maintain stable housing or employment, (D) her failure to consistently attend visitations, (E) her failure to provide for Calvin emotionally, (F) her failure to provide for Calvin financially, and (G) her periodic arrests and incarcerations. Taking all of this evidence together, the trial court could have reasonably formed a firm belief or conviction that Mother's conduct endangered Calvin's well-being.

## A. Ongoing Drug Use

"[A] parent's use of narcotics . . . may qualify as an endangering course of conduct." *J.O.A.*, 283 S.W.3d at 345; *see also In re A.D.A.*, No. 13-21-00229-CV, 2022 WL 89186, at *7 (Tex. App.—Corpus Christi–Edinburg Jan. 10, 2022, no pet. h.) (mem. op.) (recognizing that drug use "exposes the child to the possibility that the parent may be impaired or imprisoned" (quoting *In re D.J.W.*, 394 S.W.3d 210, 221 (Tex. App.—Houston [1st Dist.] 2012, pet. denied))); *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("Drug use and its effect on a parent's life and h[er] ability to parent may establish an endangering course of conduct."). This is particularly true if the mother continues to use illegal drugs while the termination suit

is pending, and it is all the more true if the mother continues to use drugs while she is pregnant. *See J.G.*, 2022 WL 187983, at \*9 (recognizing that "[a] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, supports a finding [of endangering conduct]" (quoting *In re J.A.G.*, No. 02-10-00002-CV, 2010 WL 4539442, at \*1 (Tex. App.—Fort Worth Nov. 10, 2010, no pet.) (mem. op.))); *M.B.*, 2015 WL 4380868, at \*12 ("Illegal drug use during pregnancy can support a charge that the mother has engaged in conduct that endangers the physical and emotional welfare of the child."). The Department offered evidence that Mother did both.

Mother's two caseworkers[7] testified that she had used methamphetamine and that she had "continued to engage in drug use" while the termination suit was pending. Indeed, Mother admitted as much. Needless to say, such drug use—in addition to being unsafe and illegal—violated the trial court's temporary orders and related service plan. *See J.G.*, 2022 WL 187983, at \*9 (recognizing that the trial court could "consider [the mother's] failure to complete [the] service plan as part of its endangering-conduct analysis"); *In re A.C.*, No. 02-18-00129-CV, 2018 WL 5273931, at \*3 (Tex. App.—Fort Worth Oct. 24, 2018, pet. denied) (mem. op.) (similar); *In re*

---

[7]When Calvin was removed in February 2020, Abra Piacente initially served as Mother's caseworker. Amy Smith trained under Piacente beginning in September 2020, and Smith then took over as the official caseworker near the end of January or beginning of February 2021.

*C.W.*, No. 02-17-00025-CV, 2017 WL 2289115, at \*4 (Tex. App.—Fort Worth May 25, 2017, no pet.) (mem. op.) (similar).

And although the temporary orders and service plan required Mother to submit "to random drug and/or alcohol testing," she repeatedly refused to do so. The trial court could have "reasonably infer[red] from [Mother's] failure to attend scheduled drug screenings that [she] was avoiding testing because [she] was using drugs." *In re J.W.*, No. 2-08-211-CV, 2009 WL 806865, at \*4–5 (Tex. App.—Fort Worth Mar. 26, 2009, no pet.) (mem. op.) (applying rule to presume that mother's refusal to take seven of the eight requested drug tests was because she was using drugs). This presumption was reinforced by the results of the few drug tests that Mother took; Mother's caseworkers characterized those results as raising "concerns."[8]

Moreover, Mother admitted that her drug use continued not only while the termination suit was pending but also while she was pregnant with Calvin's younger brother, H.Y. (Harry), who was born in October of 2020—while Calvin's termination suit was pending. *Cf. In re M.N.G.*, 147 S.W.3d 521, 536–38 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g) (considering evidence of mother's treatment of her

---

[8]The results from Mother's court-ordered drug tests were not admitted into evidence, and Mother's caseworkers did not directly testify as to whether Mother had tested positive or negative for drugs. Instead, they hinted at it, testifying that the test results raised "concerns" and that when they attempted to discuss the results with Mother, she became angry or claimed that the test had been invalid. Furthermore, Calvin's CASA volunteer expressly testified that "she [had] tested positive for drugs . . . when [Calvin's younger brother, Harry] was born," which was during the pendency of this case.

other children in sufficiency analysis of endangering-conduct finding).  And Mother's positive drug test at Harry's birth confirmed this.[9]  Thus, the evidence showed that despite the impact of Mother's drug use on her sons, she did not stay clean.  *See M.W.*, 2021 WL 3679247, at *5 (affirming sufficiency of endangering-conduct finding because, among other things, mother "recognized she was a longtime drug addict," she "admitted to taking controlled substances while pregnant," the baby tested positive for drugs at birth, and mother "was unable to stay clean").  "A parent's engaging in illegal drug activity after agreeing not to do so in a service plan for reunification with h[er] children"—much less while pregnant with another child—"is sufficient to establish clear and convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of h[er] children."[10]  *In re C.S.L.E.H.*, No. 02-10-00475-CV, 2011 WL 3795226, at *5 (Tex. App.—Fort Worth Aug. 25, 2011, no pet.) (mem. op.); *see In re Z.J.B.*, No. 14-18-00759-CV, 2019 WL 347474, at *5 (Tex. App.—Houston [14th Dist.] Jan. 29, 2019, pet. denied) (similar).

---

[9]Mother has appealed the termination of her parental rights to Harry in Cause Number 02-21-00339-CV.

[10]We do not hold or imply that drug use, standing alone, automatically demonstrates endangering conduct.  *See J.G.*, 2022 WL 187983, at *9 (recognizing that "an endanger[ing-conduct] finding based on drug use alone is not automatic"); *cf. In re L.C.L.*, 629 S.W.3d 909, 909–11 (Tex. 2021) (Lehrmann, J., concurring) (analogizing the appellant's argument that "mere drug use" could not support endangering-conduct finding to the argument addressed in *J.F.-G.* that "mere imprisonment" could not support endangering-conduct finding).

**B. Failure to Attend or Complete Treatments**

Not only did Mother continue to use drugs while the termination suit was pending, but she also refused to engage in the court-ordered services designed to help her quit using drugs. Mother did not even take the first step—completion of the court-ordered drug and alcohol assessment, which would have provided recommendations for her treatment. And although the trial court's temporary orders and related service plan required Mother to "attend and participate in AA/NA[11] meetings five (5) times a week"[12] (among other programs), Mother provided no evidence that she had attended or had participated in AA/NA, despite Mother's caseworker's offering to pick her up and take her to the court-ordered programs. *See J.G.*, 2022 WL 187983, at *7, *10 (noting father's failure to attend AA or NA meetings in violation of service plan as evidence supporting endangering-conduct finding).

Drug treatment was not the only program that Mother failed to complete. She was ordered to attend counseling at First Steps, but she never provided proof that she had done so. Nor did she provide evidence that she had ever attended the court-ordered parenting classes. Even during COVID, when Mother was offered the opportunity to complete many of the services remotely from the comfort of her own

---

[11]AA refers to Alcoholics Anonymous, and NA refers to Narcotics Anonymous. *See, e.g.*, *In re Z.J.*, No. 02-19-00118-CV, 2019 WL 6205252, at *6 (Tex. App.—Fort Worth Nov. 21, 2019, pet. denied) (mem. op.).

[12]The removal order provided that, if Mother tested negative for drugs, she was required to attend AA/NA only two times per week.

home, Mother completed only the court-ordered psychosocial assessment. But Mother did not follow up on any of the recommendations from that assessment.

## C. Failure to Maintain Stable Housing and Employment

Mother also failed to maintain consistent, stable housing and employment.

The Department presented evidence that Mother had led a "transient" lifestyle throughout the pendency of the case. Her first caseworker testified that Mother had "not had a consistent safe home to provide for herself or . . . for her child," and her second caseworker described Mother's housing as "unstable." Even Mother recognized that her housing was a problem; in one visit with Calvin, Calvin's foster parent overheard Mother state that "the only thing that CPS could say against her was that she did not have any housing."

Likely because Mother's housing was unstable, she failed to keep the Department up to date on her address as required by her service plan. Mother's second caseworker testified that, during the approximately six-month period when she handled Mother's case, she received an address for Mother only once, and that was just prior to trial. And that address was provided by Mother's attorney, not Mother.[13] *Cf. M.W.* 2021 WL 3679247, at *5 (holding evidence sufficient to support endangering-conduct finding because the mother, among other things, had failed to secure stable housing); *M.N.G.*, 147 S.W.3d at 538–39 (holding evidence legally

---

[13]Mother's new address was in Oklahoma, but the Department had not assessed it at the time of the termination hearing.

sufficient to support endangering-conduct finding because the mother, among other things, "had difficulty maintaining a stable home [and] had been unable to remain employed for longer than a few months").

Relatedly, Mother failed to secure and provide proof of stable employment. And one of her caseworkers testified that, "because [Mother] wasn't working[, h]er phone was consistently off, and so it was very difficult [for the Department or Calvin] to maintain any sort of consistent communication with her." The lack of stable employment, in combination with Mother's lack of stable housing, reinforced her caseworker's testimony that Mother was unable to care for herself—much less for Calvin.

These failures evidenced not only Mother's instability but also violated the temporary orders and service plan that established the conditions for her reunification with Calvin. *See In re Z.J.L.*, No. 2-09-354-CV, 2010 WL 2741199, at *5–7 (Tex. App.—Fort Worth July 1, 2010, no pet.) (mem. op.) (noting that mother's failure to maintain stable employment violated service plan and citing both the failure to maintain stable employment and the failure to maintain stable housing as evidence supporting the legal sufficiency of the endangering-conduct finding).

## D. Failure to Consistently Attend Visitations

Mother's inconsistent attendance at her scheduled visitations with Calvin lends further support to the trial court's finding of endangering conduct because "a parent's inconsistent participation in visitation can emotionally endanger a child's well-being,

15

supporting termination under [S]ubsection (E)." *D.L.G. v. Tex. Dep't of Fam. & Protective Servs.*, Nos. 03-20-00314-CV, 03-20-00315-CV, 2020 WL 6789208, at *5 (Tex. App.—Austin Nov. 19, 2020, no pet.) (mem. op.); *see In re D.A.*, No. 02-15-00213-CV, 2015 WL 10097200, at *5 (Tex. App.—Fort Worth Dec. 10, 2015, no pet.) (mem. op.) (similar); *see also J.G.*, 2022 WL 187983, at *9 (referencing father's failure "to attend visitations or check on his children's well-being" as evidence of endangering conduct).

Throughout the termination suit, Mother frequently missed her appointments to visit Calvin. Although visitations with Calvin were scheduled approximately four times per month, Mother showed up to only about half of those.

Both of Mother's caseworkers confirmed that Mother's no-shows were detrimental to Calvin's emotional well-being. On one occasion, when Mother did not arrive as scheduled, Calvin was so upset that he screamed and cried.[14] As this court has recognized, a mother's failure to consistently visit or contact her child "can be very damaging" to a child. *See In re S.I.H.*, No. 02-11-00489-CV, 2012 WL 858643, at *6 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.) (reviewing endangering-conduct finding and quoting expert testimony regarding the impact of a parent's lack of consistent contact with the child).

---

[14]At the time of the termination hearing, Calvin was eight or nine years old and had just started the third grade.

## E. Failure to Support Calvin Emotionally

Even when Mother attended her visitations, the visits were far from ideal. Rather than supporting Calvin emotionally, Mother put Calvin "in the caretaker role" by venting to him about her personal and legal troubles. Mother's caseworkers testified that Mother was "inappropriate [in] her conversations with her son, talking about very personal things that an 8- or 9-year-old should not be discussing." For example, she "talk[ed] about her being arrested," her abusive relationship with Calvin's father,[15] "her personal medical problems that she was having, her financial problems she was having, her lack of transportation, her lack of job[,]" and "[h]er lack of just general well-being." Mother also repeatedly discussed the Department's termination case with Calvin, the evidence against her, and her intent to appeal. According to the first caseworker, such conversations "burdened" Calvin rather than supported him emotionally. Outside of these visitations, Mother did not maintain any significant contact with her son.

---

[15]Mother's caseworker testified that Mother had an on-again, off-again relationship with Calvin's father throughout the case, even though Mother admitted that Calvin's father was physically and emotionally abusive.

Calvin's father filed an affidavit of voluntary relinquishment in this case, and the trial court terminated his parental rights to Calvin solely on that ground. Father has not appealed.

## F. Failure to Support Calvin Financially

Mother also failed to pay the court-ordered child support and medical support required for Calvin's care. Such failures not only speak to Mother's instability and her disregard for the temporary orders and service plan specifying the conditions for Calvin's return but also evidence the type of behavior that may be considered when assessing whether a parent has engaged in endangering conduct. *See Z.J.*, 2019 WL 6205252, at *11 (considering failure to provide court-ordered financial support and violation of service plan in endangering-conduct sufficiency analysis); *C.W.*, 2017 WL 2289115, at *4 (recognizing that "a parent's ability to provide financially for his children may be considered" in the trial court's endangering-conduct analysis).

## G. Periodic Arrests and Incarcerations

There was also evidence of Mother's periodic arrests and incarcerations during the termination suit. While Calvin was in the Department's care, Mother was arrested and incarcerated "a few times," including an arrest for illegal use of a vehicle.[16]

Although, standing alone, the evidence of Mother's arrests is far from sufficient to support an endangering-conduct finding, it is nonetheless "a fact properly considered on the [endangering-conduct] issue," *see R.W.*, 129 S.W.3d at 743, and is

---

[16]To the extent that Mother was ultimately convicted of the crimes giving rise to her arrests, such criminal activity violated the trial court's temporary orders and the service plan, which required Mother to refrain from engaging in all criminal activity. But the Department did not present evidence of any convictions, so we cannot presume that the arrests resulted in convictions.

18

relevant to prove Mother's overall instability and course of conduct. *See J.F.-G.*, 627 S.W.3d at 312–15 (reaffirming that a parent's criminal history and imprisonment are factors when considering endangering conduct although the mere fact of a conviction or sentence of incarceration, standing alone, will not support termination under Subsection (E)); *see also R.W.*, 129 S.W.3d at 743 (recognizing that, although father's "criminal history and resulting imprisonment, standing alone, [were] insufficient" to establish endangering conduct, the evidence was sufficient "when considered in conjunction with . . . [father's] history of substance abuse, mental instability, and sexual misconduct").

## III. Conclusion

Based on all of the evidence recited above—Mother's drug use; her failure to attend court-ordered treatments, to secure stable housing and employment, to attend visitations, and to provide for Calvin emotionally and financially; and her arrests and incarcerations—the trial court could have reasonably formed a firm belief or conviction that Mother had maintained an unstable and unsafe lifestyle and that her conduct had jeopardized Calvin's well-being. And Mother engaged in this conduct even though she knew that all of it violated the conditions for her reunification with Calvin.[17]

---

[17]In addition to the conduct outlined above, Mother violated the service plan in other ways that demonstrated a disregard for her reunification with Calvin. For example, Mother failed to respond to the Department's communications. She provided several phone numbers and e-mail addresses, but she gave "[h]ardly any

We hold that the evidence is factually sufficient to support the trial court's finding of endangering conduct. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E); *cf. C.S.L.E.H.*, 2011 WL 3795226, at *7 (affirming endangering-conduct finding based on evidence of "[f]ather's prior drug conviction, his continued drug use, and his failure to maintain employment").

Because we hold that factually sufficient evidence supports the trial court's endangering-conduct finding, we overrule Mother's sole issue and affirm the trial court's judgment terminating Mother's parental rights to Calvin.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: February 18, 2022

---

response" to e-mails and did not respond to the Department's messages generally. "The only time [the Department] hear[d] from her [wa]s when she initiate[d] [a] phone call." Mother also failed to appear at many of the pretrial hearings extending Calvin's placement with the Department, she failed to appear at mediation, she failed to appear at the pretrial conference, and she failed to appear at trial.

20